## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*, | ) | Case No. 22-50073 (JAM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | ) | Adv. P. No. 23-05023 (JAM) |
| | ) | |
| Plaintiff, | ) | Re: ECF Nos. 18, 42 |
| | ) | |
| v. | ) | |
| | ) | |
| LAMP CAPITAL LLC, INFINITY TREASURY MANAGEMENT INC., HUDSON DIAMOND NY LLC, HUDSON DIAMOND HOLDING LLC, LEADING SHINE NY LTD., MEI GUO, and YANPING, A/K/A "YVETTE" WANG, | ) | |
| | ) | |
| Defendants. | ) | |

## **APPEARANCES**

Avram E. Luft
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglas Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

   and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Movant and Cross-Respondent Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

Robert J. Grand (argued)
Barry R. Lax
Robert R. Miller
Lax & Neville, LLP
350 5th Avenue, Suite 4640
New York, NY 10018

*Counsel for Respondents and Cross-Movants Lamp Capital LLC and Infinity Treasury*
*Management Inc., Defendants*

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION FOR DEFAULT JUDGMENT**
**AND DENYING CROSS-MOTION TO SET ASIDE DEFAULT**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court are the Motion for Entry of Default Judgment Against Lamp Capital

LLC and Infinity Treasury Management Inc. (the "Motion for Default Judgment" or "Motion")

(ECF No. 18)[1], filed by Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee")

for the bankruptcy estate of Mr. Ho Wan Kwok (the "Individual Debtor"), and the Motion to Set

Aside Default (the "Cross-Motion to Set Aside Default" or "Cross-Motion") (ECF No. 42) filed

by Lamp Capital LLC ("Lamp Capital") and its corporate parent, Infinity Treasury Management

Inc. ("Infinity Treasury" and, together with Lamp Capital, collectively, the "Lamp Entities"), in

opposition to the Motion for Default Judgment.  For the reasons set forth below, the Motion for

Default Judgment is **GRANTED** and the Cross-Motion to Set Aside Default is **DENIED**.

## II. BACKGROUND

On February 15, 2022, Mr. Ho Wan Kwok (the "Individual Debtor") filed a voluntary

Chapter 11 petition (the "Petition") in this Court.  (Main Case ECF No. 1.)  The Individual

---

[1] References to the docket in this adversary proceeding will be styled "ECF No. __." References
to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case
ECF No. __."

Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases. (Main Case ECF Nos. 970, 1141.)

### *Lamp Capital involvement while Individual Debtor was a debtor-in-possession*

Prior to the filing of the Petition, Lamp Capital paid the Individual Debtor's legal fees associated with the preparation of the petition and provided a $1,000,000.00 (USD) retainer to the Individual Debtor's counsel against which initial fees and expenses related to the case would be applied. (Statement of Financial Affairs at 13, 17, Main Case ECF No. 77; App. for Entry of an of an Ord. Authorizing the Emp. & Retention of Brown Rudnick LLP Ex. A Aff. of William R. Baldiga ¶ 7, Main Case ECF No. 86; Decl. of Mr. Ho Wan Kwok ¶ 51, Main Case ECF No. 107.)[2]

Lamp Capital was included in the Individual Debtor's List of 20 Largest Unsecured Creditors – filed substantially contemporaneously with the Petition – with a mailing address of Lamp Capital, LLC, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. (Main Case ECF No. 4.) Hence, since February 15, 2022 – the date the Individual Debtor's Chapter 11 case was filed, Lamp Capital has been on the service list for the case. (*See* List of Creditors, Main Case ECF No. 5.)

On February 18 and 23, 2022, the Individual Debtor amended the List of 20 Largest Unsecured Creditors twice. (Main Case ECF Nos. 10, 20.) The amendments, in pertinent part, changed, respectively, the address and the contact information for Lamp Capital. (*Id.*) The service address of Lamp Capital after these amendments were filed was Lamp Capital, LLC, 667

---

[2]  Brown Rudnick withdrew its representation of the Individual Debtor after he was dispossessed of the bankruptcy estate. (Main Case ECF No. 666.) Brown Rudnick later returned as his special (criminal) counsel before also withdrawing its representation of him in that capacity. (Main Case ECF No. 2034.)

Madison Avenue, New York, NY 10065, and Lamp Capital's contact was listed as Mr. Bernardo

Enriquez ("Mr. Enriquez") at the email address bernardo@lampcapital.org.  (Main Case ECF

Nos. 10, 20; *see* Schedules at 20, Main Case ECF No. 78; *see also, e.g.*, Aff. of Service Ex. A,

ECF No. 207 (showing service on Lamp Capital at amended address).)

On April 10, 2022, "Lamp, LLC" was a defined term and was included in the Individual

Debtor's proposed Chapter 11 Plan in Class 5, Litigation Funding Claims.  (Chapter 11 Plan of

Reorganization Art. I, §§ A(66), (67), Art. III, § B(5), Art. IV, § D, Main Case ECF No. 18.)

The Court and the parties appearing in the case at that time understood Lamp LLC to be a

reference to Lamp Capital.

Lamp Capital's status as a purported creditor of the Individual Debtor was contested from

the outset of the Individual Debtor's Chapter 11 case by creditor Pacific Alliance Asia

Opportunity Fund L.P. ("PAX") and the Office of the United States Trustee (the "U.S. Trustee"),

among others.  (*See, e.g.*, Response in Opposition to Debtor's Mot. to Extend Time at 11 n. 50,

Main Case ECF No. 50; Mot. for Ord. Directing Appointment of Examiner Ex. E, Main Case

ECF No. 102.)  Indeed, PAX raised concerns about Lamp Capital in its pre-petition litigation

against the Individual Debtor.  (*See, e.g.*, Mot. for Ord. Directing Appointment of Examiner Ex.

E, Main Case ECF No. 102.)

### *Trustee's appointment and Lamp Capital's contempt of court*

For the reasons set forth therein, including allegations of "shell games" involving, among

other entities, Lamp Capital, on June 15, 2022, the Court entered a memorandum of decision and

order appointing a Chapter 11 trustee.  (Main Case ECF No. 465.)  *In re Kwok*, 640 B.R. 514

(Bankr. D. Conn. 2022).  On July 8, 2022, the Trustee was appointed.  (Main Case ECF No.

523.)

On July 28, 2022, the Trustee filed the Omnibus Motion for Entry Order Under Bankruptcy Rule 2004 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with Debtor (the "Rule 2004 Motion"). (Main Case ECF No. 638.) Lamp Capital was a subject of the Rule 2004 Motion. (*Id.*) On August 16, 2022, the Court granted the Rule 2004 Motion. (Main Case ECF No. 758.) On August 23, 2022, Lamp Capital was properly served with the Rule 2004 Subpoena by personal service on its registered agent for service of process. (Decl. of Avram E. Luft Ex. C-4, Main Case ECF No. 1047.)

On October 28, 2022, the Trustee filed a motion, which, in pertinent part, sought an order holding Lamp Capital, among others, in civil contempt of Court for failure to respond or comply with the court-authorized Rule 2004 subpoena (the "Rule 2004 Subpoena") served on it (the "Contempt Motion"). (Main Case ECF No. 1046.) Lamp Capital did not respond to the Contempt Motion. On November 30, 2022, a hearing was held on the Contempt Motion. Lamp Capital did not appear at the hearing on the Contempt Motion.

On January 20, 2023,[3] the Court issued an order, which, in pertinent part, found that Lamp Capital had neither complied with nor responded to the Rule 2004 Subpoena, and stated an order to show cause would be forthcoming. (Main Case ECF No. 1353.) On January 27, 2023, an order to show cause issued. (Main Case ECF No. 1397.) The Trustee encountered difficulty serving this order to show cause on Lamp Capital and, for that reason, on March 16, 2023, a second order to show cause was issued. (Main Case ECF No. 1546.) Lamp Capital did not

---

[3] Between November 16, 2022, and January 13, 2023, the Court was engaged with matters in an adversary proceeding related to these Chapter 11 cases styled *Pac. All. Asia Opportunity Fund v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr D. Conn. Jan. 13, 2023) (hereinafter the "Social Media/Protest Adversary"). Pursuant to Fed. R. Civ. P. 65(b)(3), the Court was required to address the matters in that adversary proceeding "at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character."

respond to either order to show cause.  On April 18, 2023, a hearing was held on the order to show cause.  Lamp Capital did not appear at the scheduled hearing.  Thereafter, on April 21, 2023, the Trustee filed the Declaration of Nicholas A. Basset detailing, in pertinent part, service on Lamp Capital.  (Main Case ECF No. 1694.)

On April 26, 2023, the Court entered the Order Holding Golden Spring and Lamp Capital in Contempt of Court (the "Contempt Order").  (Main Case ECF No. 1709.)  In pertinent part, the Contempt Order imposed sanctions on Lamp Capital for the Trustee's attorneys' fees and costs related to the prosecution of the Contempt Motion and provided Lamp Capital with thirty (30) days – until May 26, 2023 – to purge itself of contempt, after which date the Trustee could move to impose further sanctions on Lamp Capital.  (*Id.*)

To date, Lamp Capital has not made any attempt to purge itself of contempt.  The Trustee has not moved for further sanctions or sought payment of the awarded attorneys' fees and costs. (Main Case ECF No. 1827.)

### *The instant adversary proceeding*

On October 26, 2023, the Trustee initiated this adversary proceeding by filing a complaint (the "Complaint") alleging, in pertinent part, that Lamp Capital is the *alter ego* of the Individual Debtor and/or it and/or its assets are beneficially owned by the Individual Debtor. (ECF No. 1.)  On these bases, the Trustee seeks turnover of Lamp Capital and its assets to the Individual Debtor's bankruptcy estate and delivery of Lamp Capital and its assets to the Trustee. (*Id.*)

On October 31, 2023, the Clerk of Court issued a summons (the "Summons") which, among other things, directed the Trustee to serve the Summons and Complaint on the Lamp Entities.  (ECF No. 4.)  On November 9, 2023, the Trustee filed a certificate of service

evidencing service of the Summons and Complaint on Lamp Capital and Infinity Treasury within seven days after the issuance of the Summons. (ECF No. 6.) *See* Fed. R. Bankr. P. 7004; Fed. R. Civ. P. 4. Therefore, pursuant to Fed. R. Bankr. P. 7012, the Lamp Entities had until November 30, 2023 to file an answer or responsive motion. The Lamp Entities did not do so.

On December 8, 2023, the Trustee requested the Clerk of Court enter default against, in pertinent part, the Lamp Entities. (ECF No. 11.) On December 14, 2023, the Clerk of Court entered default against the Lamp Entities (the "Default"). (ECF No. 13.)

On December 26, 2023, the Trustee filed the Motion for Default Judgment. (ECF No. 18.) Three days later, on December 29, 2023, the Lamp Entities filed a Notice of Appearance in this adversary proceeding. (ECF No. 24.) On January 12, 2024, prior to the deadline to respond to the Motion for Default Judgment, the Lamp Entities filed the Cross-Motion to Set Aside Default. (ECF No. 42.) On January 19, 2024, the Trustee filed a response to the Cross-Motion and reply in further support of the Motion. (ECF No. 53.) On January 23, 2024, a hearing on the Motion and the Cross-Motion was held.

This matter is ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant adversary proceeding in which the instant matters arise is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. DISCUSSION

The Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 are set forth below.

### A. Cross-Motion to Set Aside Default

The Court turns first to the Cross-Motion to Set Aside Default, filed in opposition to the Motion for Default Judgment, because the Motion is premised upon the Default.

"The [C]ourt may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c), *made applicable by* Fed. R. Bankr. P. 7055. The party moving to set aside the default bears the burden of establishing "good cause." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). "Good cause" is undefined, but the United States Court of Appeals for the Second Circuit has developed three criteria to determine whether good cause exists for setting aside an entry of default, namely, (1) whether the default was willful; (2) whether the defaulted party presents a meritorious defense; and (3) whether setting aside the default would prejudice the responding party. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citing *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) and *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d. Cir. 1993)); *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (citing *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004)).

In considering these criteria, courts are mindful that "[s]trong public policy favors resolving disputes on the merits." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d

8

Cir. 1996).[4]  For this reason, "when doubt exists as to whether a default should be granted or

vacated, the doubt should be resolved in favor of the defaulting party."  *Enron*, 10 F.3d at 96; *see*

*Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("While courts are entitled to enforce

compliance with the time limits of the Rules by various means, the extreme sanction of a default

judgment must remain a weapon of last, rather than first, resort."); *Gill v. Stolow*, 240 F.2d 669,

670 (2d Cir. 1957) (same).  Nevertheless, these policy interests must be balanced "against the

competing interest in maintaining 'an orderly efficient judicial system' in which default is a

useful weapon 'for enforcing compliance with the rules of procedure.'"  *Sony*, 800 F.2d at 320

(internal citations omitted).  Ultimately, determining a motion to set aside a default is a matter of

discretion, reviewed for abuse of discretion.  *See Bricklayers*, 779 F.3d at 186; *but see Davis v.*

*Musler*, 713 F.2d 907, 913 (2d Cir. 1983) ("[A]n abuse of discretion 'need not be glaring' to

justify reversal of a district court order denying a motion to vacate a default judgment . . ..")

(internal citations omitted).

### 1.  Did the Lamp Entities willfully default?

Turning first to willfulness, a willful default is established where a "defendant defaulted

deliberately," regardless of whether such deliberate default was in "bad faith."  *Gucci Am., Inc.*

*v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) (holding district court made error of law

in interpreting *Am. All. Ins.* to require a showing of bad faith to establish willfulness); *see*

*Bricklayers*, 779 F.3d at 187.  Willfulness is "more than merely negligent or careless" and may

---

[4]  The same criteria are assessed in determining a motion to set aside a default judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b) and, hence, the parties have cited and this opinion cites decisions regarding default judgment in addition to decisions on defaults.  *See Bricklayers*, 779 F.3d at 186 n. 1 (stating that because the criteria were identical, application of default judgment caselaw was appropriate on the facts and circumstances before the court).  However, as counsel for the Lamp Entities argued, a motion to set aside a default is subject to a "less rigorous standard" than a motion to set aside default judgment.  *Am. All. Ins..*, 92 F.3d at 59.

9

be found "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Sec. & Exch. Comm'n v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *see Bricklayers*, 779 F.3d at 186 (same) (citing *McNulty*). An inference of willful default is supported by the failure to deny that the defaulted party "received the complaint" and other relevant pleadings and orders, coupled with failure to contend that non-compliance "was due to circumstances beyond [the defaulted party's] control." *Guggenheim*, 722 F.3d at 455 (citing *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994)).

Regardless of the fact that the Lamp Entities were properly served, they argue that Infinity Treasury lacked actual notice of the Summons and Complaint because Infinity Treasury's registered agent for service of process returned the Summons and Complaint to the Trustee. Similarly, despite the fact that Lamp Capital was properly served, Lamp Capital's counsel asserted that *he believed* Lamp Capital lacked actual notice of the Summons and Complaint. Therefore, the Lamp Entities argue, their default could not have been willful. Instead, they argue that as soon as they received actual notice of the Summons and Complaint "through the grapevine" of these Chapter 11 cases and related adversary proceedings, they reached out to the Trustee and asked him to consent to set aside the Default.

The Trustee argues that Infinity Treasury was properly served under Delaware corporate law by service on their registered agent for service of process and was, moreover, also served at its last known place of business. The Trustee further asserts that Infinity Treasury failed to comply with its corporate obligations to provide a valid registered agent with a means to inform it of service of process. Moreover, the Trustee argues Lamp Capital has put forward no factual material, including any affidavits or declarations, to establish it lacked actual notice of the Summons and Complaint. Instead, the Trustee argues, the Default was part of a continuing

10

pattern of defaulting and ignoring court orders in these Chapter 11 cases by the Lamp Entities and their principal, Mr. Qiang Guo ("Mr. Guo"), the Individual Debtor's son.  The Trustee also asserts that Mr. Guo and the Lamp Entities have been aware of these proceedings since before the Petition was filed, have selectively chosen to engage or avoid them, and the Default was a continuation of that choice.

The Court agrees with the Trustee.  First, the Lamp Entities were served with and received the Summons and Complaint as well as subsequent pleadings, notices, and orders in this adversary proceeding. *See Guggenheim*, 722 F.3d at 455.  The Lamp Entities – both Delaware entities – were properly served with the Summons and Complaint by first class mail on their registered agents for service of process. *See* Del. Code Ann. tit. 8, § 132(a) & (b)(3); Fed. R. Civ. P. 4(h)(1)(B); Fed. R. Bankr. P. 7004(b).  Delaware corporate law provides that "[e]very corporation shall have and maintain in this State a registered agent," Del. Code Ann. tit. 8, § 132(a), which "registered agent . . . shall . . . accept service of process . . . directed to the corporations for which it serves as registered agent and forward same to the corporation to which the service or communication is directed," Del. Code Ann. tit. 8, § 132(b)(3).  Fed. R. Civ. P. 4(h).  In addition, Fed. R. Bankr. P. 7004(b) authorizes service of a complaint by first class mail. Moreover, the Trustee also served both Lamp Entities at their shared business address, which the Individual Debtor used as his address on the Petition and is also the business address of many entities associated with him, including his adjudged *alter egos* Golden Spring (NY) Limited ("Golden Spring") and HK International Funds Investments (USA) Limited ("HK USA").  The Trustee accomplished service "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections" in satisfaction of the due process clause of the Constitution. *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950).

The Lamp Entities argument that they did not have actual notice of the Summons and Complaint, notwithstanding proper service, is unavailing in establishing lack of receipt. In *Nature's First Inc. v. Nature's First Law, Inc.*, cited by the Lamp Entities, the United States District Court for the District of Connecticut vacated a default judgment upon a showing that service was improper. 436 F. Supp. 2d 368 (D. Conn. 2006). In that case, the purported recipient of process (a) filed an affidavit disputing receipt of process and (b) was not empowered to receive process on behalf of the defendant. *Nature's First*, 436 F. Supp. at 374–75. *Nature's First* does not stand for the proposition that lack of actual notice, when service is proper, establishes lack of receipt of the Summons and Complaint. Rather, it stands for the proposition that "a default judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* at 372.

Similarly, *In re Decor Holdings, Inc.*, cited by the Lamp Entities, is a case regarding improper service of process. 21-CV-6725 (GRB), 2023 WL 170595, at *3 (E.D.N.Y. Jan. 12, 2023) ("Sumec filed a motion to vacate the entry of default judgment for failure to properly serve."). Regarding actual notice, the United States District Court for the Eastern District of New York stated that, *where service is improper*, the burden on willfulness does not shift to the plaintiff unless the defaulted defendant lacked actual notice *in addition to being improperly served. Decor*, 2023 WL 170595, at *4 (citing *Lu v. Nisen Sushi of Commack, LLC*, No. 18-CV-7177(RJD)(ST), 2022 WL 16754744, at *3 (E.D.N.Y. Aug. 29, 2022) (similarly regarding motion to vacate default due to improper service of process), *report and recommendation*

*adopted by* No. 18-CV-7177(RJD)(ST), 2022 WL 4597436 (E.D.N.Y. Sept. 30, 2022)).

Therefore, the Lamp Entities reliance on *Decor Holdings* is also misplaced.

Even if actual notice were relevant where service is proper – which it is not, the Lamp

Entities have not established that they lacked actual notice. First, The Lamp Entities do not

credibly dispute the Trustee's evidence that he served Infinity Treasury's and Lamp Capital's

registered agents by, *e.g.*, putting forward that some other entity serves as registered agent for

either Lamp Entity. Second, while Infinity Treasury's registered agent could not forward service

of the Summons and Complaint to it, the Lamp Entities did not put forth any evidence – whether

by affidavit, declaration, or any other means – that Lamp Capital's registered agent did not

forward Summons and Complaint to Lamp Capital. Third, the Lamp Entities cannot controvert

that the Trustee served the Lamp Entities at their business address. Finally, the Lamp Entities'

account of how they allegedly ultimately received actual notice is incomplete and not

satisfactorily explained. *See McNulty*, 137 F.3d at 738. Counsel represented that the Lamp

Entities are aware of what happens in the Chapter 11 cases and related adversary proceedings

"through the grape vine," ignoring that Lamp Capital has been served with the majority of

pleadings and order in the Individual Debtor's case since the day it was filed. Other than that

unsatisfactory explanation, they simply assert that after the response deadline, they became

aware of this adversary proceeding and counsel was hired by someone who counsel represented

that he *believes* to be Mr. Guo. There is no factual material supporting any of these assertions

other than representations of counsel.

Therefore, for all these reasons, the Court has no doubt that the Lamp Entities were

served with and were in receipt of the Summons and Complaint. *See Guggenheim*, 722 F.3d at

455; *see also Enron*, 10 F.3d at 96.

Second, there is no dispute that the Lamp Entities failed to timely respond.  *See*

*Guggenheim*, 722 F.3d at 455.

Third, the Court concludes that the Lamp Entities' failure to respond was not due to circumstances beyond their control.  *See id.*  The Lamp Entities argue that they did not respond to Summons and Complaint due to a lack of actual notice.  If the Lamp Entities lacked actual notice, it is due to circumstances under their control.  As noted above, under Delaware law it is the Lamp Entities' obligation to "maintain in this State a registered agent."  Del. Code Ann. tit. 8, § 132(a).  Infinity Treasury failed to provide its current and valid information for forwarding service of process to its registered agent.  This failure was clearly within its control.  Similarly, Lamp Capital ignored proper service on its registered agent.  Doing so was plainly within its control.  Finally, the Lamp Entities ignored service on their business address.  The decision to do so was obviously within their control.

Therefore, for all these reasons, the Court has no doubt that the Lamp Entities' failure to respond to the Summons and Complaint was not due to circumstances outside their control.  *See Guggenheim*, 722 F.3d at 455; *see also Enron*, 10 F.3d at 96.

Based on the conclusions that (i) the Lamp Entities were served with and were in receipt of the Summons and Complaint; (ii) the Lamp Entities did not timely respond to the Summons and Complaint; and (iii) the Lamp Entities' failure to respond was not due to circumstances beyond their control, an inference that the Lamp Entities defaulted deliberately is permissible. *See McNulty*, 137 F.3d at 738; *Guggenheim*, 722 F.3d at 455.

In addition to an inference being permissible, the facts and circumstances of the Lamp Entities' involvement with the Individual Debtor's Chapter 11 case support the conclusion that the Lamp Entities willfully defaulted.  Despite Lamp Capital (i) providing the Individual Debtor

with $1,000,000.00 to fund his efforts while a debtor-in-possession; (ii) being properly served with the Rule 2004 Subpoena, motions, pleadings, and orders; and (iii) being admittedly aware of proceedings in the Individual Debtor's case "through the grapevine", Lamp Capital did not respond to the Contempt Motion, did not appear at the hearing on the Contempt Motion, did not appear when ordered to appear and show cause why it should not be held in contempt, and has not engaged in any efforts to purge itself of contempt in the nine months since it was held in contempt.  The Court provided Lamp Capital with multiple opportunities to be heard and avoid contempt sanctions.  The Court also provided Lamp Capital the opportunity to purge itself of contempt.  Lamp Capital has declined every opportunity provided.  Choosing to default rather than respond to the Complaint is a continuation of Lamp Capital's disregard for these proceedings.

For all these reasons, the Court concludes, without any doubt, that the Lamp Entities defaulted deliberately and willfully.  *Cf. Enron*, 10 F.3d at 96.

## 2.  Do the Lamp Entities present a meritorious defense?

Turning next to whether the Lamp Entities present a meritorious defense, "a 'defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.'"  *Green*, 420 F.3d at 110 (citing *Galaxiworld*, 249 F.3d at 173); *see In re Martin-Trigona*, 763 F.2d 503, 505 n. 2 (2d Cir. 1985) (holding burden is on defaulted party to present a meritorious defense, given the effect of default).  The party seeking to set aside the default must present a defense that "is good at law so as to give the *factfinder* some determination to make."  *Am. All. Ins.*, 92 F.3d at 62 (emphasis added).  "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts."  *Sony*, 800 F.2d

at 320–21.  A meritorious defense cannot be established by "mere conclusory statements,"
including "sworn conclusory denials" in affidavits or declarations.  *Id.*; *see Bricklayers*, 779 F.3d
at 187.  When evaluating the presented evidence, "[w]hether a defense is meritorious 'is
measured not by whether there is a likelihood that it will carry the day, but whether the evidence
submitted, if proven at trial, would constitute a complete defense.'"  *State Street*, 374 F.3d at 167
(citing *Enron*, 10 F.3d at 98); *see McNulty*, 137 F.3d at 740.

The Lamp Entities argue that they have presented numerous meritorious defenses to the
Complaint.  First, the Lamp Entities argue that the Complaint insufficiently pleads *alter ego*
under Delaware law.  Second, they argue that the Complaint alleges no wrongful conduct on the
part of Infinity Treasury.  Third, they argue that the Trustee is barred from recovery under
*Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) and the related doctrine
of *in pari delicto* because he stands in the shoes of the Individual Debtor.

The Trustee argues that the Lamp Entities make purely legal arguments that may be dealt
with on a motion for default judgment just as on a motion to dismiss instead of putting forward
evidence to present a question for the ultimate factfinder.  Therefore, the Trustee asserts, the
Lamp Entities have failed to meet their burden on this element.

The Lamp Entities do not raise questions of fact but instead raise preliminary questions of
law that may be determined at default judgment.  Indeed, upon default "it remains for the court
to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in
default does not admit mere conclusions of law."  *Adams v. Bostick (In re Bostick)*, 400 B.R.
348, 354–55 (Bankr. D. Conn. 2009) (internal citations omitted).  Essentially, at default
judgment a court tests the complaint against a hypothetical motion to dismiss.  *See Miller v.
Kasden (In re Kasden)*, 209 B.R. 236, 238 (8th Cir. BAP 1997), *appeal dismissed by* 141 F.3d

1288 (8th Cir. 1998).  Here, the motion to dismiss is not hypothetical – the Lamp Entities argue that the Trustee lacks standing to seek relief and, in any event, fails to state an *alter ego* claim, upon which relief can be granted.  The Court determines these objections below, first turning to standing and then to sufficiency of pleading.

### i.  Does the Trustee have standing to bring his claims?

"To have standing, '[a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.'" *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)) (modifications in the original).  "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To avoid dismissal, the relevant jurisdictional facts must be "clearly alleged", *Warth v. Seldin*, 422 U.S. 490, 490 (1972), which is a lower pleading standard than required for pleading the merits of a cause of action.  *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018); *Toretto v. Donnelley Fin. Solutions, Inc.*, 523 F. Supp. 3d 464 (S.D.N.Y. 2021); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018).

In *Wagoner*, the United States Court of Appeals for the Second Circuit was concerned only with actions brought by the bankruptcy trustee in his or her capacity as successor in interest to the debtor – not with actions brought by a bankruptcy trustee on behalf of creditors under statutory authority.  944 F.2d at 118 ("The trustee insists he is not asserting the claims of the noteholders, so it is unnecessary for us to delve deeply into when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors."); *see St. Paul Fire & Marine Ins. Co. v.*

*PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) ("Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors.").  Absent such statutory authority, the Second Circuit held that "a bankruptcy trustee has no standing *generally* to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."  944 F.2d at 118 (emphasis added); *see Hirsch*, 72 F.3d at 1093 ("Thus, the trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings."); *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir.1994) ("Bankruptcy courts have long been charged with ascertaining, under state law, whether claims belong to the bankruptcy estate or to other claimants.").  Therefore, the first question a court must answer under *Wagoner* is whether the claim belongs to the debtor.

Where a claim belongs to the debtor, courts consider whether the trustee is *in pari delicto* by imputation of the debtor's conduct.  944 F.2d at 119–20.  Although an assertion of *in pari delicto* is typically considered an affirmative equitable defense, the *Wagoner* doctrine, including its consideration of *in pari delicto*, "functions as a prudential standing limitation."  *Carney ex rel. Highview Point Partners, LLC v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 228 (D. Conn. 2015); *cf. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 346–47 (3d Cir. 2001).  *But see Kirschner v. KPMG LLP*, 938 N.E.2d 941, 959–60 (N.Y. 2010) (Ciparick, J. dissenting); *Adelphia Commc'n Corp. v. Bank of Am., N.A. (In re Adelphia Commc'n Corp.)*, 365 B.R. 24, 45 (Bankr. S.D.N.Y. 2007).  *Wagoner* does not stand for the proposition that *in pari delicto* by imputation from the debtor bars a bankruptcy trustee from bringing a cause of action on behalf of creditors as allowed by statute.

In this adversary proceeding, the Trustee brings two claims against the Lamp Entities –
the first and second claims of the Complaint alleging that Lamp Capital is the *alter ego* of and/or
it and/or its assets are equitably owned by the Individual Debtor, respectively.  (Complaint ¶¶
69–79.)  Both claims are brought under section 544 of title 11 of the United States Code.
"[N]either the *Wagoner* rule nor the *in pari delicto* doctrine apply to a trustee's statutory
standing under Section 544 of the Bankruptcy Code."  *Wells Fargo Bank, N.A. v. First Republic
Bank (In re Salander)*, 503 B.R. 559, 569 n. 12 (S.D.N.Y. 2013); *see Arnold v. First Citizens
Nat'l Bank (In re Cornerstone Homes, Inc.)*, 567 B.R. 37, 52–53 (Bankr. W.D.N.Y. 2017).
Therefore, if the claims are properly brought under section 544 on behalf of creditors, *Wagoner*
does not apply.  *See Wagoner*, 944 F.2d at 118.

The Court concludes that the plain text of section 544(a) gives the Trustee standing to
bring both an *alter ego* claim and a beneficial ownership claim, standing in the shoes of
hypothetical judgment lien creditor.  Section 544(a) states

> The trustee shall have, as of the commencement of the case, and without regard to any
> knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any
> transfer of property of the debtor or any obligation incurred by the debtor that is voidable
> by . . . [*e.g.*,] a creditor that extends credit to the debtor at the time of the commencement
> of the case, and that obtains, at such time and with respect to such credit, a judicial lien
> on all property on which a creditor on simple contract could have obtained such a judicial
> lien, whether or not such creditor exists;

11 U.S.C. § 544(a).  Under section 544(a), a bankruptcy trustee may assert the rights and powers
to bring generalized claims any hypothetical creditor could bring rather than the particularized
claims of particular creditors.  Section 544(b) gives a bankruptcy trustee the ability to bring
particular sorts of claims – avoidance claims – that particular, actual creditors could bring.  The
former encompasses *alter ego* and beneficial ownership claims, which, *e.g.*, a judgment creditor
could bring to enforce a judgment against certain assets, provided applicable non-bankruptcy law

19

cognizes such claims. *See, e.g.*, *Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 748 (N.D. Ill. 2022);

*Coan v. Manners (In re David X. Manners Co., Inc.)*, Case No. 15-51490 (JJT), Adv. P. No. 17-

05012 (JJT), 2018 WL 6271603, at *2 (Bankr. D. Conn. Nov. 27, 2018); *Spradlin v. Beads &*

*Steeds Inns, LLC (In re Howland)*, 516 B.R. 163, 166–67 (Bankr. E.D. Ky. 2014); *In re*

*Archdiocese of Milwaukee*, 483 B.R. 693, 697 (Bankr. E.D. Wis. 2012).

This interpretation of section 544(a) is supported by Second Circuit precedent.  In

*PepsiCo*, the Second Circuit announced

> It is plain from [legislative history] that Congress intended to protect all creditors by making the trustee the proper person to assert claims against the debtor.  This reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion.  If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.

884 F.2d at 700–01.  In *PepsiCo*, the Second Circuit adopted the reasoning of *Koch Refining v.*

*Farmers Union Central Exchange., Inc.*, 831 F.2d 1339 (7th Cir. 1987), which held that a

bankruptcy trustee could pursue *alter ego* claims under section 544(a) because the harm was

generalized to the general creditor body rather than particularized harm to a particular creditor,

831 F.2d at 1351–54.

The Lamp Entities suggest the District of Connecticut disagrees with the Second Circuit's

analysis.  This suggestion is incorrect.  In *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd.*

*P'ship (In re Flanagan)*, 415 B.R. 29 (D. Conn. 2009), the District of Connecticut, relying on

*PepsiCo*, instead observed that section 544(a) provides a trustee with the power to pursue "the

types of claims that the Trustee, standing in the shoes of a hypothetical creditor, could have

asserted," such as an *alter ego* claim.  *Flanagan*, 415 B.R. at 47.  In *Flanagan*, however, the

movant, who was a creditor and a successor to the bankruptcy trustee, did not bring the *alter ego*

claim under section 544(a) and could no longer timely do so.  415 B.R. at 47–48.  On those facts – wholly distinct from the present circumstances, where the Trustee has timely brought his *alter ego* claim under section 544 – the District of Connecticut applied the *Wagoner* doctrine and found the movant lacked standing to bring an *alter ego* claim.  *Id.*

Therefore, the Court must determine whether a creditor could bring the first and second claims in the Complaint under applicable non-bankruptcy law before applying the *Wagoner* doctrine.  Bankruptcy courts generally apply forum state choice-of-law rules for issues of state law.  *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  Under Connecticut law, "[t]he law of the governing jurisdiction of a foreign limited liability company governs: (1) The internal affairs of the company; (2) the liability of a member as member and a manager as manager for a debt, obligation or other liability of the company; and (3) the liability of a series of the company."  Conn. Gen. Stat. § 34-275(a).  Based on a predecessor statute, the Connecticut Supreme Court has ruled that the governing jurisdiction of a foreign limited liability company determines the issue of veil-piercing.  *Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007).  Federal courts, moreover, apply the same rule.  *Hyundai-Wia Mach. Am. Corp. v. Rouette (In re Rouette)*, 564 B.R. 157, 174 (Bankr. D. Conn. 2017).  The Court concludes that this rule also applies to beneficial ownership claims.

The Complaint clearly alleges that Lamp Capital is a Delaware entity.  (Complaint ¶ 8.) *See Seldin*, 422 U.S. at 490.  There is no dispute as to this allegation, which is the only factual allegation relevant to the Lamp Entities' standing objection.

Delaware law allows creditors to reverse pierce the corporate veil.  *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021).  Delaware also recognizes beneficial ownership claims.  *See Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945)

(citing *Chadwick v. Parkhill Corp.*, 41 A. 823 (Del. Ch. 1928)); *Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Preston v. Allison*, 650 A.2d 646 (Del. 1994); *Hannigan v. Italo Petroleum Corp. of Am.*, 77 A.2d 209, 213 (Del. 1949).  Furthermore, creditors may bring beneficial ownership actions.  *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023).

Therefore, the Court concludes that the *Wagoner* doctrine does not apply on the circumstances before it and the Trustee has clearly alleged standing to bring his causes of action against the Lamp Entities and that, without a doubt, the Lamp Entities' defense that the Trustee lacks standing is without merit.

### ii.  Has the Trustee sufficiently plead his claims?

In determining whether the first and second claims in the Complaint state a claim upon which relief may be granted, the Court must take the well-pleaded allegations of the Complaint, including those in documents attached to it, as true.  *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 189 (D. Conn. 2009).  The Court must also consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Under Fed. R. Civ. P. 8(a), made applicable by Fed. R. Bankr. P. 7008, the claims must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard," while not a "probability requirement," requires more than "sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 556).  Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

The Lamp Entities object that the Complaint contains insufficient allegations against Infinity Treasury and does not seek relief against it.  The Court disagrees.  The Trustee alleges that Infinity Treasury is the nominal owner of Lamp Capital.  (Complaint ¶ 9.)  The second claim, in pertinent part, seeks turnover of Infinity Treasury's ownership interest in Lamp Capital to the Individual Debtor's bankruptcy estate via delivery of the same to the Trustee on the basis that the Complaint alleges the Individual Debtor is the equitable owner of Lamp Capital.  (*Id.* ¶¶ 75–79.)  The Complaint was necessarily filed against Infinity Treasury; the Lamp Entities' objection to the contrary lacks any merit.

The Lamp Entities also object on several grounds that the Trustee has failed to state an *alter ego* against Lamp Capital, for which relief can be granted.

First, they object that, under Delaware law, *alter ego* can only be found between a corporate parent and its subsidiary.  The Court disagrees.  *Compare Official Comm. of Unsecured Creditors v. Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.)*, 178 B.R. 956, 974–75 (D. Del. 1994) (concluding that a direct parent-subsidiary relationship is not needed under Delaware law where the two alter ego elements are present); *Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 556–58 (Bankr. D. Del. 2022) (same); *Official Comm. of Unsecured Creditors v. Highland Capital Mgmt. L.P. (In re Moll Indus. Inc.)*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (same) *with Burtch v. Opus, L.L.C. (In re Opus East, L.L.C.)*, 480 B.R. 561, 570 (Bankr. D. Del. 2012) (citing *E. Minerals & Chemicals Co. v. Mahan*,

225 F.3d 330, 333 n. 7 (3d Cir. 2000) (applying Pennsylvania law)).  Moreover, the second claim – which the Lamp Entities do not argue was insufficiently plead – seeks a finding that the Individual Debtor beneficially owns Lamp Capital, which, if true, would resolve this issue.

Second, the Lamp Entities argue that the Trustee has insufficiently plead facts, which, taken as true, would support the conclusion that the Individual Debtor exercised dominion and control over Lamp Capital.

In determining dominion and control, Delaware courts traditionally consider "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Cap.*, 251 A.3d at 706 (internal citations omitted).  "While these factors are useful, any single one of them is not determinative." *Id.* at 706–07.

Paragraphs 18 through 33 of the Complaint contain the allegations regarding the Lamp Entities and are supported by exhibits 1 through 16, 18 through 33, 46, 56, 59 through 75, 84, 94 through 104 attached to the Complaint and references to entries on the docket of these Chapter 11 cases and related adversary proceedings.  The Court concludes that the Trustee plausibly alleges, among other things, that Lamp Capital (a) was formed by the Individual Debtor; (b) provides funding for the Individual Debtor's expenses, including related to the filing of the Petition and to assets such as his former yacht, the Lady May (the "Lady May"), and his apartment at the Sherry-Netherland Hotel (the "Apartment"); (c) is staffed by employees of the Individual Debtor, including Ms. Yvette Wang ("Ms. Wang"), whom this court has already determined is an employee of the Individual Debtor; (d) shares an office address with other

24

entities associated with the Individual Debtor, including Golden Spring and HK USA, which have already been adjudged to be the Individual Debtor's *alter egos*; and (e) has no independent business purpose or source of funds. The Court concludes the Trustee has plausibly alleged Lamp Capital is controlled and dominated by the Individual Debtor.

The Lamp Entities' first argument to the contrary is that the facts alleged in the Trustee's complaint support the conclusion that Lamp Capital observed corporate formalities because there were corporate officers and corporate documents were created. Even if Lamp Capital did observe corporate formalities, that alone would not be dispositive. None of the *alter ego* factors are dispositive. It is also not true that the Complaint alleges that Lamp Capital observed corporate formalities. The Complaint alleges, among other things, siphoning of funds for personal use, *i.e.*, disregard of corporate formalities. The Lamp Entities' second argument is that none of the allegations is alone sufficient to support *alter ego*. However, none of the allegations *are* alone. Determinations of *alter ego* claims require a wholistic analysis. These objections are meritless.

Third, the Lamp Entities argue that the Trustee has insufficiently plead facts, which, taken as true, would support the conclusion that Lamp Capital's corporate form was used for fraud or similar injustice.

The second element of *alter ego* is that the corporate form to be disregarded causes fraud or similar injustice. *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying

25

Delaware law).  It is not necessary to establish fraud, *Fletcher*, 68 F.3d at 1457, or fraudulent intent in the creation of the entity whose form is to be disregarded, *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

In paragraphs 18 through 33 of the Complaint, the Trustee alleges that (a) Lamp Capital had no business purpose or existence other than pooling the Individual Debtor's liquid assets, which were siphoned to pay his expenses without consideration; and (b) its indirect, record owner was Mr. Guo, the Individual Debtor's son.  In the fraudulent transfer context, these would be considered badges of fraud.  *Salomon ex rel. Kaiser v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).  In the present context, the Court concludes that the Trustee has plausibly alleged that the corporate form of Lamp Capital serves to shield the Individual Debtor's assets from his creditors.  The Lamp Entities' objection is meritless.

### iii. The Lamp Entities Do Not Present a Meritorious Defense

The Lamp Entities have failed to present a meritorious defense.  They put forward *no* factual material to create an issue for a factfinder.  *See State Street*, 374 F.3d at 167; *Am. All. Ins.*, 92 F.3d at 62; *Sony*, 800 F.2d at 320–21.  Instead, they make legal arguments regarding the Trustee's standing to bring his claims against them and the insufficiency of his pleading, which arguments are properly considered upon a motion for default judgment.  *See Bostick*, 400 B.R. at 354–55.  The Court has considered these arguments.  They are meritless.  The Lamp Entities have failed to meet their burden to "present a meritorious defense demonstrating 'that if relief is granted the outcome of the suit may be different than if the entry of default . . . is allowed to stand.'"  *Martin-Trigona*, 763 F.2d at 505 n. 2 (internal citations omitted).  The Court has no doubts regarding this conclusion.  *Cf. Enron*, 10 F.3d at 96.

26

### 3.  Does granting the Cross-Motion prejudice the Trustee?

The Court turns next to whether granting the Cross-Motion to Set Aside Default would prejudice the Trustee.  In that regard "delay alone is not a sufficient basis for establishing prejudice" but "[r]ather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion.'" *Musler*, 713 F.2d at 916.

The Lamp Entities argue that the only conceivable prejudice to the Trustee is delay. They argue such delay is not cognizable on a motion to set aside a default and, moreover, is in this case minimal.  They also argue that the interest in determining matters on the merits overrides the prejudice caused by delay in these circumstances.

The Trustee argues that where there is a willful default and no presentation of a meritorious defense, prejudice does not need to be established.  Regardless, the Trustee argues, prejudice exists here as evidenced by Lamp Capital being in contempt of court for discovery abuse, which contempt it did not even attempt to purge before seeking to set aside the Default. The Trustee also argues there is a likelihood for collusion between the Lamp Entities and the other defendants, which are nominally controlled by Ms. Mei Guo ("Ms. Guo") – Mr. Guo's sister and the Individual Debtor's daughter.

The Court agrees with the Trustee.  The Lamp Entities' pleadings and argument ignore their ongoing contempt of court.  Pressed about their contempt during the hearing, the Lamp Entities insisted that if the Cross-Motion were granted, they would respond in good faith to discovery requests propounded in this adversary proceeding.  In other words, instead of purging themselves of contempt, they seek to evade its consequences.

27

"[N]either [counsel] nor [a party has] a unilateral right to decide whether or when to comply with discovery demands." *535 Broadway Assocs. v. Com. Corp. of Am.*, 159 B.R. 403, 405 (S.D.N.Y. 1993). Lamp Capital did not respond to the Rule 2004 Motion. Lamp Capital did not respond to or comply with the Rule 2004 Subpoena. Lamp Capital did not respond to the Contempt Motion and did not appear at the hearing on the Contempt Motion. Lamp Capital did not appear in court when ordered to appear and show cause why it should not be held in contempt for failing to respond to or comply with the Rule 2004 Subpoena. In the nine months that have passed since the entry of the Contempt Order, Lamp Capital has not taken any steps to purge itself of contempt. It remains in contempt and, based on the representations of counsel, would so remain if the Cross-Motion were granted.

Granting the Cross-Motion would prejudice the Trustee because Lamp Capital remains in contempt of court and has not purged itself of contempt. "One of the primary purposes of a Rule 2004 examination is as a pre-litigation device." *In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009). This is because a bankruptcy trustee (i) is a neutral outsider without knowledge of the debtor's assets, liabilities, and financial affairs and (ii) has a duty to maximize the bankruptcy estate, including by initiating litigation. *See Wash. Mut.*, 408 B.R. at 50; *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 707–12 (Bankr. S.D.N.Y. 1991) (discussing purpose of Rule 2004 in historical jurisprudential context). Rule 2004 discovery is exceptionally broad to serve this purpose; it is broader than discovery permitted in adversary proceedings. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *compare* Fed. R. Bankr. P. 2004 *with* Fed. R. Civ. P. 26; Fed. R. Bankr. P. 7026.

Lamp Capital's contempt deprived the Trustee of his court-authorized Rule 2004 discovery, which deprivation the Lamp Entities evidence no intent to remedy. Instead, the Lamp

28

Entities suggest that at this juncture discovery should proceed anew in this adversary proceeding. This would reward the Lamp Entities for their contempt and their improper efforts to prevent the Trustee from having information necessary to file this adversary proceeding.  It would also reward an abuse of process.  The Lamp Entities' position on discovery evidences ongoing, contemptuous bad faith, notwithstanding counsel's representations to the contrary.

The Court has no doubt that setting aside the Default would cognizably prejudice the Trustee.  *Cf. Enron*, 10 F.3d at 96.

### 4. Cross-Motion to Set Aside Default Is Denied

Ultimately, in determining the Motion, the Court must balance the public's interest in having matters determined on the merits against the competing interest in preventing abuse of process.  *Sony*, 800 F.2d at 320.  In the interest of determining matters on the merits, the Court must afford the Lamp Entities the benefit of any doubt as to the criteria.  *Enron*, 10 F.3d at 96. As noted above, however, the Court has no doubt that (1) the Default was willful; (2) the Lamp Entities have failed to present a meritorious defense; and (3) setting aside the Default would cognizably prejudice the Trustee.  Moreover, the Court "need not reach the question of whether the plaintiff would suffer prejudice as [it is] 'persuaded that the default was willful and . . . [is] unpersuaded that the defaulting party has a meritorious defense.'"  *Bricklayers*, 779 F.3d at 187 (citing *McNulty*, 137 F.3d at 738) (ellipsis in original).  This is because even if "the record does not strongly support a finding of prejudice . . . willful default and the absence of meritorious defenses" are sufficient to deny a motion to set aside a default.  *Rafidain Bank*, 15 F.3d at 244. Therefore, the finding of prejudice on these circumstances is cumulative in counseling denial of the Cross-Motion.

The Lamp Entities argue that because the standard is less rigorously applied on motions to set aside a default under Fed. R. Civ. P. 55(c) than it is on motions to set aside default judgement under Fed. R. Civ. P. 60(b), the Court should grant the Cross-Motion and set aside the Default, notwithstanding the deficiencies in their arguments.  While the Lamp Entities are correct that courts apply a "less rigorous standard" on motions to set aside a default than on motions to set aside a default judgment, *Am. All. Ins.*, 92 F.3d at 59, this does not mean that motions to set aside a default are granted as a matter of course, *see, e.g.*, *Bricklayers*, 779 F.3d at 190 (affirming in part entry of default judgment and denial of cross-motion to set aside default); *Martin-Trigona*, 763 F.2d at 506 (upholding entry of default judgment and denial of cross-motion to set aside default).  The Court concludes, within its discretion, that based upon the facts and circumstances before it, because the criteria set forth by the Second Circuit all strongly recommend denial of the Cross-Motion and because Lamp Capital has already engaged in discovery abuse and been found in contempt of court despite multiple opportunities afforded it to avoid contempt and purge itself of contempt, *cf. Meehan*, 652 F.2d at 277, the Cross-Motion to Set Aside Default should be denied.

### B.  Motion for Default Judgment

Turning to the Motion for Default Judgment, the movant seeking default judgment must first demonstrate that the defaulted defendants were properly served.  *Copelco Cap., Inc. v. Gen. Consul of Bol.*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996).  As to liability, if the defaulted defendants were properly served, "[a] court accepts as true all well-pleaded allegations against a defaulting defendant."  *Finkel v. Romanowicz*, 577 F.3d 79, 82 n. 6 (2d Cir. 2009).  The movant must, nevertheless, demonstrate a *prima facie* case that, accepting such allegations as true, a reasonable fact finder could find in its favor at trial.  *Bostick*, 400 B.R. at 355.

As discussed above, the Trustee properly served the Summons and Complaint on the Lamp Entities' registered agents for receipt of service of process via first class mail pursuant to section 132(a) and (b)(3) of title 8 of the Delaware Code, Fed. R. Civ. P. 4(h)(1)(B), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7004(a), and Fed. R. Bankr. P. 7004(b).

A reasonable factfinder could conclude from the alleged facts that Lamp Capital is the *alter ego* of the Individual Debtor. *See Bostick*, 400 B.R. at 355. As discussed above, under Delaware law, *alter ego*, also known as piercing the corporate veil, has two elements: (i) the corporate entity whose form is to be disregard was so dominated and controlled by the alleged *alter ego* so as to be in fact a single economic entity and (ii) the corporate form to be disregarded caused fraud or similar injustice. *Manichaean Cap.*, 251 A.3d at 706–07.

A reasonable factfinder could find on the basis of the allegations that the Individual Debtor dominated and controlled Lamp Capital, as evidenced by, *e.g.*, the alleged facts that Lamp (a) was formed by the Individual Debtor; (b) provides funding for the Individual Debtor's expenses, including related to the filing of the Petition and to assets such the Lady May and the Apartment; (c) is staffed by employees of the Individual Debtor, including his employee Ms. Wang; (d) shares an office address with other entities associated with the Individual Debtor, including his *alter egos* Golden Spring and HK USA; and (e) has no independent business purpose or source of funds. (Complaint ¶¶ 18–33, Exs. 1–16, 18–33, 46, 56, 59–75, 84, 94–104.)

A reasonable fact finder could also find on the basis of the allegations that Lamp Capital's corporate form caused fraud or similar injustice, as evidenced by, *e.g.*, the alleged facts that (f) Lamp Capital had no business purpose or existence other than pooling the Individual

Debtor's liquid assets, which were siphoned to pay his expenses without consideration; and (g) its indirect, record owner was Mr. Guo, the Individual Debtor's son.  (*Id.*)

Therefore, a reasonable factfinder could determine both elements in favor of granting the Trustee his requested relief.

A reasonable factfinder could also conclude from the alleged facts that the Individual Debtor is the equitable owner of Lamp Capital and/or its assets.  *See Bostick*, 400 B.R. at 355.  In determining whether a party is an equitable owner, courts consider, among other things, whether "(1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property."  *Dordevic*, 67 F.4th at 381.  In this adversary proceeding, (1) the alleged indirect nominal owner of Lamp Capital is Mr. Guo, the Individual Debtor's son, (2) Lamp Capital is alleged to have received funds for no consideration, (3) the purpose of Lamp Capital is alleged to be the avoidance of the Individual Debtor's creditors, and (4) the Individual Debtor is alleged to dominate and control Lamp Capital, as discussed above.  (Complaint ¶¶ 18–33, Exs. 1–16, 18–33, 46, 56, 59–75, 84, 94–104.)  Based on these factors, a reasonable factfinder could grant the Trustee his requested relief.

Therefore, because the Trustee (i) properly served the Summons and Complaint and (ii) sets forth a *prima facie* case that Lamp Capital is the *alter ego* of the Individual Debtor and/or Lamp Capital and/or its assets are equitably owned by the Individual Debtor, and because the Cross-Motion to Set Aside Default is denied and the Default is not set aside, the Motion for Default Judgment is granted.

### C.  Entry of Judgment

Rule 54(b), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7054,

states:

> When an action presents more than one claim for relief–whether as a claim, counter-claim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay. . . .

Fed. R. Civ. P. 54(b).

Rule 54(b) allows a court to enter judgment as to less than all claims only where the

claims are "separate and distinct."  *Schwartz v. Eaton*, 264 F.2d 195, 196 (2d Cir. 1959).  The

Second Circuit has defined "claim" for the purposes of Rule 54(b) as "the aggregate of operative

facts which give rise to a right enforceable in the courts."  *Acumen Re Mgmt. v. Gen. Sec. Nat'l*

*Ins. Co.*, 769 F.3d 135, 141 (2d Cir. 2014) (citing *Gottesman v. Gen. Motors Corp.*, 401 F.2d

510, 512 (2d Cir. 1968) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d

Cir. 1943))).  Regardless of whether the claims are separated in the complaint, claims are

separate and distinct claims for the purposes of Rule 54(b) when the "claims are based upon

factual and legal questions that are distinct from those questions remaining before the trial

court."  *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989).

In determining whether claims are separate and distinct, courts in this circuit consider whether

the claims "arise out of 'a single transaction composed of a closely related series of

occurrences'" and whether the claims are likely to be proved with different witnesses and

exhibits.  *Acumen*, 769 F.3d at 143 (citing *Hudson River Sloop*, 891 F.2d at 418; *Gottesman*, 401

F.2d at 512; *Backus Plywood Corp. v. Com. Decal, Inc.*, 317 F.2d 339, 341 (2d Cir. 1963).

The Complaint in this case contains six claims for relief.  The first two claims are

discussed above: (i) the first claim seeks declaratory judgment that Lamp Capital is the *alter ego*

of the Individual Debtor and, on that basis, turnover of Lamp Capital's assets to the estate; and (ii) the second claim seeks declaratory judgment that the Individual Debtor equitably owns Lamp Capital and/or its assets and, on that basis, turnover of Lamp Capital and/or its assets to the estate. (Complaint ¶¶ 69–79.)  The third and fourth claim seek, respectively, (iii) declaratory judgment that Hudson Diamond NY LLC ("HDNY") is the *alter ego* of the Individual Debtor and, on that basis, turnover of HDNY's assets to the estate; and (iv) declaratory judgment that the Individual Debtor equitably owns HDNY and/or its assets and, on that basis, turnover of HDNY and/or its assets to the estate. (Complaint ¶¶ 80–91.)  Finally, the fifth and sixth claim seek, respectively, (v) declaratory judgment that Leading Shine NY LTD ("Leading Shine") is the *alter ego* of the Individual Debtor and, on that basis, turnover of Leading Shine's assets to the estate; and (vi) declaratory judgment that the Individual Debtor equitably owns Leading Shine and/or its assets and, on that basis, turnover of Leading Shine and/or its assets to the estate. (Complaint ¶¶ 92–102.)

While the factual and legal questions regarding the first two claims are very similar, they are largely distinct from those regarding the four subsequent claims.  Although the Trustee does allege that, ultimately, the Individual Debtor is the beneficial owner and *alter ego* of Lamp Capital, HDNY, and Leading Shine and that these entities exist as part of a broad "shell game," the transaction or occurrence underlying each claim for relief is specific to the subject entities. There is some evidentiary overlap between the first two claims and the remaining four claims, but the exhibits attached to the Complaint demonstrate that the Trustee has a largely distinct evidentiary basis for the third and fourth claims and again for the fifth and sixth claims.  The entities all shared key personnel who may be called to testify, but their testimony would largely need to be specific to each entity.  Arguably, the first and second claim could have been brought

as a distinct action from the other claims.  Indeed, the Trustee has initiated many such actions or filed counterclaims against other alleged shell companies he alleges are part of the Individual Debtor's alleged shell game.  (*See, e.g.*, *HK Int'l Funds Invs. (USA) Ltd. v. Despins ex rel. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), ECF No. 221; *Despins ex rel. Kwok v. Greenwich Land, LLC (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. Mar. 27, 2023), ECF No. 1; *Despins ex rel. Kwok v. Guo (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05008 (JAM) (Bankr. D. Conn. May 16, 2023), ECF No. 1; *Despins ex rel. Kwok v. HCHK Techs., Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05013 (Bankr D. Conn. June 8, 2023), ECF No. 1; *Despins ex rel. Kwok v. Taurus Fund LLC (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05017 (JAM) (Bankr. D. Conn. July 11, 2023), ECF No. 1; *Despins ex rel. Kwok v. Golden Spring (New York) Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05018 (Bankr. D. Conn. Dec. 12, 2023), ECF No. 35.)

Judgment would also enter against parties different than those against whom the remaining claims are brought.  The Lamp Entities are not alleged to own, indirectly or otherwise, HDNY or Leading Shine.  Mr. Guo is the purported nominal owner, indirect or otherwise, of the Lamp Entities.  Ms. Guo, his sister, is the purported nominal owner, indirect or otherwise, of HDNY and Leading Shine.  The only claims brought against the Lamp Entities are the first and second claims.

The touchstone as to whether there is no just reason for delay is "sound judicial administration."  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).  Nevertheless, sound judicial administration "does not require that Rule 54(b) requests be routinely granted."  *Curtiss-Wright*, 446 U.S. at 10.  Courts must consider the "interrelationship of the claims so as to

prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* However, the "discretionary judgment" of the trial court should be "given substantial deference." *Id.*

Here, this decision and order determines the first and second claims against the Lamp Entities. These are the only claims against the Lamp Entities. As discussed above, these claims are distinct and separate from those against the other defendants. Moreover, it determines that default judgment shall enter against the Lamp Entities. Ms. Guo, HDNY, and HDNY's corporate parent have not been defaulted. Leading Shine seeks to set aside the default entered against it. This action will persist for some time after the entry of this Order on claims separate and distinct from those this order determines. The Court concludes that, on these facts and circumstances, the Lamp Entities should be afforded the opportunity to immediately appeal this Order and that affording them this opportunity does not contradict the efficiency interest in preventing piecemeal appeals because the claims determined by this order are separate and distinct from those that remain to be determined.

## V. CONCLUSION AND ORDER

For the reasons stated above, pursuant to Fed. R. Civ. P. 54(b), 55(b), and 55(c), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7054 and 7055, it is hereby

**ORDERED:** The Motion for Default Judgment (ECF No. 18) is **GRANTED**. Default judgment shall enter on claims one and two of the Complaint against the Lamp Entities; and it is further

**ORDERED:** The Cross-Motion to Set Aside Default (ECF No. 42) is **DENIED**. The Default (ECF No. 13) as entered against the Lamp Entities is not set aside and remains in effect; and it is further

**ORDERED:**  On or before February 6, 2024, the Trustee shall serve this Order on Ms. Wang, the only non-appearing defendant.  On or before February 8, 2024, the Trustee shall file a certificate of service demonstrating compliance with this Order.

Dated at Bridgeport, Connecticut this 1st day of February, 2024.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut