## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05023 (JAM) |
| Plaintiff, | Re: ECF No. 97 |
| v. | |
| LAMP CAPITAL LLC, INFINITY TREASURY MANAGEMENT INC., HUDSON DIAMOND NY LLC, HUDSON DIAMOND HOLDING LLC, LEADING SHINE NY LTD., MEI GUO, and YANPING, A/K/A "YVETTE" WANG, | |
| Defendants. | |

## **APPEARANCES**

Douglass E. Barron
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

    and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

Douglas Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Movant Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

Stephen M. Kindseth (argued)
James M. Moriarty
Zeisler & Zeisler PC
10 Middle Street, 15th Floor
Bridgeport, CT 06604

*Counsel for Respondents Hudson Diamond NY LLC, Hudson Diamond Holding LLC, Leading Shine NY Ltd., and Ms. Mei Guo, Defendants*

## MEMORANDUM OF DECISION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

Julie A. Manning, United States Bankruptcy Judge

## I.    INTRODUCTION

Before the Court is a motion for summary judgment (the "Motion for Summary Judgment" or "Motion") filed by the plaintiff in the above-captioned adversary proceeding, Mr. Luc A. Despins, in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Ho Wan Kwok[1] (the "Individual Debtor").  (ECF No. 97.)[2]   The Motion seeks summary judgment on the third, fourth, fifth, and sixth claims of the complaint against defendants Hudson Diamond NY LLC ("HDNY"), Hudson Diamond Holding LLC ("HD Holding", and, together with HDNY, collectively, the "HD Entities"), Leading Shine NY Ltd. ("LSNY"), and Ms. Mei Guo (together with LSNY, collectively, the "LS Parties"), the Individual Debtor's daughter.  The claims at issue allege HDNY and LSNY are the *alter egos* of, or are beneficially owned by, the Individual Debtor and seek turnover of HD Holding's

---

[1]  "Kwok" is the Cantonese Chinese pronunciation of the Individual Debtor's family name. "Guo" is the Mandarin Chinese pronunciation of his family name.  In addition to "Ho Wan Kwok", the Individual Debtor is known as "Kwok Ho Wan", "Wengui Guo", "Guo Wengui", "Miles Kwok", and "Miles Guo", among other names and *aliases*.
[2]  References to the docket in this adversary proceeding will be styled "ECF No. __". References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __".

ownership interest in HDNY, Ms. Guo's ownership interest in LSNY, and the assets of HDNY

and LSNY to the Trustee for the benefit of the Individual Debtor's estate.  (ECF No. 1.)

This memorandum of decision sets forth the Court's conclusions of law.  Fed. R. Bankr.

P. 7052.  For the reasons set forth below, the Motion is **GRANTED**.

## II.    BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this

Court.  (Main Case ECF No. 1.)  On June 15, 2022, presented with allegations related to the

Individual Debtor's financial mismanagement and an alleged shell game involving numerous

corporate *alter egos*, the Court entered a memorandum of decision and order appointing a

Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate.  (Main Case ECF No.

465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was

appointed as the Trustee.  (Main Case ECF No. 523.)

On October 26, 2023, the Trustee commenced the above-captioned adversary proceeding

by filing a complaint.  (ECF No. 1.)  The complaint alleges six claims for relief:

> 1.      The first claim seeks declaratory judgment that Lamp Capital LLC
> ("Lamp Capital") is the *alter ego* of the Individual Debtor and, on that basis, an order
> requiring turnover of all assets of Lamp Capital to the Trustee pursuant to 11 U.S.C. §§
> 541, 542, and 544 (Complaint ¶¶ 69–74, ECF No. 1);
>
> 2.      The second claim seeks declaratory judgment that the Individual Debtor
> beneficially owns Lamp Capital and/or its assets and, on those bases, an order requiring
> turnover of Infinity Treasury Management Inc.'s ("Infinity Treasury") ownership interest
> in Lamp Capital and all assets of Lamp Capital to the Trustee pursuant to 11 U.S.C. §§
> 541, 542, and 544 (*id.* ¶¶ 75–79);
>
> 3.      The third claim seeks declaratory judgment that HDNY is the *alter ego* of
> the Individual Debtor and, on that basis, an order requiring turnover of all assets of
> HDNY to the Trustee pursuant to 11 U.S.C. §§ 541, 542, and 544 (*id.* ¶¶ 80–86);
>
> 4.      The fourth claim seeks declaratory judgment that the Individual Debtor
> beneficially owns HDNY and/or its assets and, on those bases, an order requiring

turnover of HD Holding's ownership interest in HDNY and all assets of HDNY to the Trustee pursuant to 11 U.S.C. §§ 541, 542, and 544 (*id.* ¶¶ 87–91);

     5.     The fifth claim seeks declaratory judgment that LSNY is the *alter ego* of the Individual Debtor and, on that basis, an order requiring turnover of all assets of LSNY to the Trustee pursuant to 11 U.S.C. §§ 541, 542, and 544 (*id.* ¶¶ 92–97); and

     6.     The sixth claim seeks declaratory judgment that the Individual Debtor beneficially owns LSNY and/or its assets and, on those bases, an order requiring turnover of Ms. Guo's ownership interest in LSNY and all assets of LSNY to the Trustee pursuant to 11 U.S.C. §§ 541, 542, and 544 (*id.* ¶¶ 98–102).

A separate judgment has entered on the first and second claims in favor of the Trustee and against Lamp Capital and Infinity Treasury. *See* Fed. R. Civ. P. 58(b), *made applicable by* Fed. R. Bankr. P. 7058(b). (Default Judgment, ECF No. 66; *see* Memorandum of Decision, ECF No. 63, *aff'd by* Memorandum of Decision, *Lamp Capital LLC v. Despins (In re Kwok)*, Civil No. 24 cv 217 (KAD) (D. Conn. Mar. 20, 2025), ECF No. 22).)

On November 30, 2023, the HD Entities and Ms. Guo – who is the nominal owner of HD Holding in addition to LSNY – were granted an extension of time to answer or otherwise respond to the Complaint. (ECF No. 10.) On December 18, 2023, the HD Entities and Ms. Guo timely filed a joint motion to dismiss. (ECF No. 15.)

LSNY did not timely respond to the Complaint. On December 14, 2023, the Clerk of Court entered default against, among others, LSNY upon the Trustee's request. (ECF No. 13.) On March 6, 2024, the Court granted LSNY's motion to set aside the default against LSNY despite finding the default was willful and LSNY lacked a meritorious defense because, in any event, issues regarding LSNY would be litigated in this adversary proceeding in relation to the sixth claim against Ms. Guo. (ECF No. 74.) On March 14, 2024, LSNY filed a motion to dismiss the complaint on the same bases as the HD Entities' and Ms. Guo's joint motion. (ECF No. 76.)

On March 19, 2024, a hearing was held on the motions to dismiss.  On March 22, 2024, the Court issued a memorandum of decision and order denying, for the reasons set forth therein, the motions to dismiss.  (ECF No. 87.)  On April 5, 2024, the HD Entities and LS Parties filed a joint answer to the complaint.  (ECF No. 92.)

On September 19, 2024, the Trustee filed the Motion for Summary Judgment, seeking summary judgment on the remaining unresolved claims of the complaint.  (ECF No. 97.) Attached to the Motion, the Trustee filed a memorandum of law and a Local Rule 56(a)(1) statement of undisputed facts (the "L.R. 56(a)(1) Statement").  (*Id.*)  Contemporaneously, the Trustee filed the Declaration of Douglass E. Barron (the "Barron Declaration") with attached exhibits (each, a "Trustee Exhibit").  (ECF No. 98.)  On October 23, 2024, the HD Entities and LS Parties jointly filed an opposition to the Motion and a Local Rule 56(a)(2) statement of undisputed facts (the L.R. 56(a)(2) Statement and, together with the L.R. 56(a)(1) Statement, collectively, the "Statements").  (ECF Nos. 112, 115.)  The L.R. 56(a)(2) Statement contains only responses to the Trustee's asserted undisputed facts – it contains no additional asserted undisputed facts.  (ECF No. 115.)  The HD Entities and LS Parties filed no exhibits or affidavits. On November 6, 2024, the Trustee filed a reply in support of the Motion.  (ECF No. 117.)  The Motion is fully briefed.

On December 10, 2024, a hearing on the Motion was held.  (*See* Dec. 10, 2024, Hr'g Tr., ECF No. 127.)  This matter is ripe for adjudication.

## III.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District

Court for the District of Connecticut dated September 21, 1984. This adversary proceeding in which the instant matters arise is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.    SUMMARY JUDGMENT STANDARD

Upon a motion for summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) *made applicable by* Fed. R. Bankr. P. 7056.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114–15 (2d Cir. 2017) (citing *Anderson*). While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," a movant is not required to "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986). Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

## V. UNDISPUTED FACTS

### A. Evidentiary Objections

Before stating the undisputed facts, the Court turns to three evidentiary objections raised by the HD Entities and LS Parties. First, they argue the Court may not draw a negative inference against them at summary judgment based upon the Individual Debtor's and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination. Second, they argue this Court's prior findings of fact and conclusions of law are inadmissible hearsay and cannot be found to be law of the case. Third, they argue the statements in certain emails are inadmissible hearsay. The Trustee argues (i) the Court may note the assertion of Fifth Amendment rights for the limited purpose of observing the deponent does not dispute the Trustee's claims; and (ii) law of the case applies.

#### 1. Fifth Amendment

Regarding the Individual Debtor's and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination, the Court agrees with the Trustee. While the HD Entities and LS Parties are correct that an adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment, *Stichting ter*

*Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005), their invocations have limited relevance to the extent they are used to show the Individual Debtor and Ms. Guo do not dispute the evidence the Trustee has put forward regarding the Individual Debtor's domination and control of HDNY and LSNY. It explains what may otherwise seem like a gap in the record, making clear the Individual Debtor and Ms. Guo were asked about these issues. Given this matter is before a court, not a jury, and the Court's awareness that an adverse inference is impermissible at summary judgment, the relevance of the Individual Debtor's and Ms. Guo's invocation of their Fifth Amendment rights against self-incrimination is not outweighed by prejudice to the HD Entities and LS Parties. Fed. R. Evid. 401–03.

## 2.    Law of the Case

With respect to law of the case, it is within the Court's discretion whether prior determinations in these jointly administered Chapter 11 cases and related adversary proceedings constitute law of the case. *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 567 B.R. 247, 254 (Bankr. S.D.N.Y. 2017) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983); *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)), *aff'd sub nom. Krakowski v. Allied Pilots Ass'n (In re AMR Corp.)*, 834 F. App'x 660 (2d Cir. 2021), *cert. denied*, *Krakowski v. Allied Pilots Ass'n*, 142 S. Ct. 347 (2021). "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," although the doctrine does not prevent a court from revisiting its prior determinations or allowing renewed argument on an issue. *Arizona*, 460 U.S. at 618. "As to issues of fact, given an

8

unchanged record, 'law-of-the-case reluctance [to reconsider] approaches maximum force.'"
*Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009) (alteration in original) (citing 18B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478.5.)

The HD Entities and LS Parties put forward no factual matter to dispute the established record in these jointly administered Chapter 11 cases and related adversary proceedings. Nevertheless, they argue because the HD Entities and LS Parties were not parties to the adversary proceedings where certain findings of fact and conclusions of law, law of the case does not apply. The HD Entities and LS Parties are incorrect. Unlike *res judicata*, it is not essential to law of the case that the parties before the court were involved in the previous litigation. *In re Motors Liquidation*, 590 B.R. 39, 62, 66–68 (S.D.N.Y. 2018), *aff'd sub nom. Reichwaldt v. General Motors LLC (In re Motors Liquidation)*, 792 F. App'x 28 (2d Cir. 2019); *but see Westerbeke Corp. v. Daihatsu Moto Co., Ltd.*, 304 F.3d 200, 218–19 (2d Cir. 2002) (holding that, under New York as opposed to federal law, law of the case requires the parties participated in the previous litigation). Moreover, (i) the determinations related to Lamp Capital were made in this adversary proceeding (*see* ECF No. 66); (ii) Ms. Guo *was* a party to the adversary proceedings styled *HK International Funds Investments (U.S.A.) Limited, LLC v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023) and *Despins v. Guo (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05008 (JAM) (Bankr. D. Conn. April 3, 2024); and (iii) Ms. Guo was deposed regarding HDNY in the adversary proceeding styled *Despins v. Greenwich Land LLC (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. July 2, 2024). Accordingly, to the extent its prior determinations are not presently subject to a factual dispute, the Court concludes law of the case is appropriate as set forth below.

3.       **Hearsay**

Regarding the HD Entities and LS Parties remaining hearsay objections, "material relied

on at summary judgment need not be admissible in the form presented.  Rather, so long as the

evidence in question 'will be presented in admissible form at trial,' it may be considered on

summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary

order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam)); *see* Fed. R.

Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence").  Assuming the emails are put

forward for the truth of the matter asserted – which is doubtful –, the authors of the emails at

issue, Mr. Ross Heinemeyer and Mr. Daniel Podhaskie, could be called to testify at trial and, if

their testimony were inconsistent with the content of the emails, the emails could be admitted at

trial.  Fed. R. Evid. 801(d)(1).  Accordingly, the Court overrules the HD Entities' and LS Parties'

hearsay objection.

B.       **Statement of Undisputed Facts**

Upon review of (i) the Statements; (ii) the Barron Declaration and attached Trustee

Exhibits; (iii) the record of this adversary proceeding; (iv) the record of the jointly administered

Chapter 11 cases and related adversary proceedings; and (v) other matters of which the Court

may take judicial notice, having ruled on LSNY's evidentiary objections and unsealing material

to the extent necessary to issue this Opinion and warranted under section 107 of the Bankruptcy

Code and precedent of the United States Court of Appeals for the Second Circuit[3], the Court

states the following undisputed facts:

---

[3]  Upon performing a particularized review of documents submitted in support of, and in
opposition to, the Motion for Summary Judgment, pursuant to the balancing test propounded by
the Second Circuit in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Court determines, to the

1.      On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court.  (Main Case ECF No. 1.)  In his statements and schedules, the Individual Debtor listed $3,850.00 in assets and $373,803,498.09 in liabilities.  (Summary of Assets and Liabilities, Main Case ECF No. 78.)  Presently, $18,896,778,040.83 in Proofs of Claim have been filed against the Individual Debtor's estate.[4]  (Main Case Claims Register.)

### *Hudson Diamond NY*

2.      HDNY is a New York limited liability company formed on May 30, 2018.  (*See* Articles of Organization, **Tr. Ex. 1**.)  HDNY's sole member is HD Holding, a Delaware limited liability company of which Ms. Guo, the Individual Debtor's daughter, is the sole member.  (Oct. 25, 2019, Letter at HR0002387, **Tr. Ex. 2**; First Amended and Restated Operating Agreement at HR0002591–92, **Tr. Ex. 3**.)  On January 24, 2019, HD Holding received its membership interest in HDNY pursuant to an assignment from the previous sole member of HDNY, Hudson Diamond Holding Inc. ("HD BVI")[5], an entity held by Mr. Qiang Guo, the Individual Debtor's son.  (Assignment of Membership Interest, **Tr. Ex. 4**; Affidavit of Raven Kendra Kelly, **Tr. Ex. 5**; Operating Agreement at HR0002598–99, **Tr. Ex. 6**.)

---

extent necessary to publish this unredacted Opinion, (i) the performance of the judicial function requires the unsealing of the material previously sealed by orders (the "Sealing Orders") of the Court (*see* ECF Nos. 5, 103, 116); and (ii) the strong presumption of public access to the material submitted at summary judgment is not rebutted by the privacy and commercial information interests in maintaining the sealing of the material, *Maxwell*, 929 F.3d at 47; *see* 11 U.S.C. § 107; *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995); *In re Purdue Pharma*, 632 B.R. 34 (Bankr. S.D.N.Y. 2021).

[4]  The Individual Debtor instructed his followers to file frivolous Proofs of Claim in his Chapter 11 case.  (*See* Main Case ECF Nos. 1399, 1440.)  Nevertheless, none of the Proofs of Claim asserted have been disallowed in part or in their entirety.

[5]  HD Holding is Hudson Diamond Holding *LLC*, while HD BVI is Hudson Diamond Holding *Inc.*

3.      HDNY has used 162 E. 64th Street, New York, NY, as its address.  (Entity Information, **Tr. Ex. 13**.)  This address has also been used as an address by (i) the Individual Debtor himself (Chapter 11 Voluntary Petition for Debtor at Part 1 § 5, Main Case ECF No. 1); (ii) Mr. Aaron Mitchell, the Individual Debtor's counsel, (Consent to Change Attorney, **Tr. Ex. 14**); and (iii) various entities, including HD Holding (Limited Liability Agreement, **Tr. Ex. 18**), LSNY (Form W-9, **Tr. Ex. 102**), Golden Spring (New York) Limited ("Golden Spring") (Chapter 11 Voluntary Petition for Debtor at Part 1 § 5, Main Case ECF No. 1), Lamp Capital LLC ("Lamp Capital") (*see, e.g.*, Certification of Beneficial Owner, **Tr. Ex. 19**), Greenwich Land LLC ("Greenwich Land") (Form SS-4, **Tr. Ex. 29**), HK International Funds Investments (U.S.A.) Limited, LLC ("HK USA") (Limited Liability Company Agreement, **Tr. Ex. 15**), GTV Media Group, Inc. ("GTV") (Printout of Entity Search, **Tr. Ex. 16**), Saraca Media Group, Inc. ("Saraca") (**Tr. Ex. 17**), Rule of Law Society IV, Inc. ("ROLS") (Form CHAR500, **Tr. Ex. 20**), and Rule of Law Foundation III, Inc. ("ROLF") (Form 990, **Tr. Ex. 20**).

4.      The Court has ruled the following are *alter egos* of the Individual Debtor:

a.      Golden Spring (Order, *Despins v. Golden Spring (New York) Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05018 (JAM) (Bankr. D. Conn. Dec. 4, 2023), ECF No. 35);

b.      Lamp Capital (Memorandum of Decision, ECF No. 63, *affirmed sub nom.* Memorandum of Decision, *Lamp Capital LLC v. Despins (In re Kwok)*, Civil No. 3:24-CV-217 (KAD) (D. Conn. Mar. 20, 2025), ECF No. 22);

c.      Greenwich Land, (Memorandum of Decision, *Despins v. Greenwich Land LLC (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. July 2, 2024), ECF No. 133, *appeal pending* Civil No. 3:24-CV-1185 (KAD) (D. Conn. Feb. 3, 2025)); and

d.      HK USA (Memorandum of Decision, *HK Int'l Funds Invs. (U.S.A.) Limited, LLC v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), ECF No. 221, *affirmed by* Memorandum of Decision, Civil No. 3:23-CV-458 (KAD) (D. Conn. Aug. 23, 2024), ECF No. 60, *appeal pending* No. 24-2504 (2d Cir. April 24, 2025)).

The Court has also ruled (i) the Individual Debtor controls Saraca and GTV, which are part of his media enterprise (Corrected Memorandum of Decision ¶ 3, *Pac. All. Asia Opportunity Fund LP v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2025), ECF No. 133, *affirmed sub nom.* Memorandum of Decision, *Kwok v. Pac. All. Asia Opportunity Fund LP (In re Kwok)*, Civil No. 3:23-CV-102 (KAD) (D. Conn. Sept. 30, 2024), ECF No. 65); and (ii) the Individual Debtor founded and leads ROLF (*id.* ¶ 1).

5.        Ms. Yvette Wang, Mr. Max Krasner, and Mr. Daniel Podhaskie have served as officers of HDNY.  (Consent of Sole Member, **Tr. Ex. 21**.)  Ms. Wang and Mr. Podhaskie have served as signatories for HDNY.  (*Id.*)  Ms. Wang, Mr. Krasner, and Mr. Podhaskie referred to the Individual Debtor as the "boss" or the "principal".  (*See, e.g.*, Emails, **Tr. Exs. 30, 35, 36**; April 28, 2021, Phone Call Tr., **Tr. Ex. 32**.)  Ms. Guo has declared to this Court that Ms. Wang and Mr. Krasner also handled the business affairs of HDNY's sole member, HD Holding.  (Decl. of Mei Guo ¶ 5, Main Case ECF No. 2092.)

6.        In May 2018, the law firm Hodgson Russ LLP ("Hodgson Russ") assisted in forming HDNY.  (Articles of Organization, **Tr. Ex. 1**; June 1, 2018, Email Chain, **Tr. Ex. 8**.)  Hodgson Russ received instruction regarding the formation of HDNY from Ms. Yvette Wang.  (May 29, 2018, Email Chain, **Tr. Ex. 9**; *see also* May 29–30, 2018, Email Chain, **Tr. Ex. 10**.)  Subsequently, in January 2019, Hodgson Russ assisted with the assignment of the membership interest in HDNY from HD BVI to HD Holding.  (Jan. 24–28, 2019, Email Chain, **Tr. Ex. 11**.)  Hodgson Russ received instruction from Ms. Wang with respect to this assignment.  (Jan. 15, 2019, Email, **Tr. Ex. 12**.)

7.        Hodgson Russ also represented the Individual Debtor in connection with litigation and corporate matters.  (Sept. 12, 2022, Letter, **Tr. Ex. 7**.)  In both internal Hodgson Russ email

correspondence and in correspondence between Hodgson Russ and Ms. Wang related to HDNY, the Individual Debtor is referred to as the "principal". (Jan. 15, 2019, Email, **Tr. Ex. 12**; *see also* Jan. 24–28, 2019, Email Chain, **Tr. Ex. 11**.) In correspondence related to HDNY, Hodgson Russ communicated with Ms. Wang using her Golden Spring email address. (Jan. 24–28, 2019, Email Chain, **Tr. Ex. 11**.)

8.      Ms. Wang opened bank accounts on behalf of HDNY at Chase, Capital One, The Bank of Princeton, IDB Bank, and Morgan Stanley. (CapitalOne SQN Account Prints, **Tr. Exs. 79–80**; Bank of Princeton Account Agreement, **Tr. Ex. 81**; IDB Bank General Application, **Tr. Ex. 83**; Chase Business Depository Certificates, **Tr. Exs. 84–85**; Morgan Stanley Single Advisory Contract, **Tr. Ex. 86**.)

9.      HDNY was funded by transfers from at least ACA Capital Group Limited ("ACA") and Saraca. (HDNY Feb. 2021 IDB Bank DDA Statement at IDB Confidential 000359, **Tr. Ex. 51**; HDNY March 2020 CapitalOne Bank Statement at CapOne-Kwok-00000069, **Tr. Ex. 54**; *compare* HDNY Sept. 2018 Chase Bank Statement at 2189, **Tr. Ex. 52** *with* Saraca Sept. 2018 Chase Bank Statement at 959, **Tr. Ex. 53**.) For example, on February 2, 9, and 10, 2021, ACA transferred a total of approximately $18,000,000.00 to HDNY in three transfers of approximately $6,000,000.00 each. (HDNY Feb. 2021 IDB Bank DDA Statement at *IDB Confidential 000359, **Tr. Ex. 51**.) Saraca transferred a total of no less than $700,000.00 through transfers that occurred on September 12, 2018, March 2, 2020, and March 16, 2020. (HDNY March 2020 CapitalOne Bank Statement at CapOne-Kwok-00000069, **Tr. Ex. 54**; *compare* HDNY Sept. 2018 Chase Bank Statement at 2189, **Tr. Ex. 52** *with* Saraca Sept. 2018 Chase Bank Statement at 959, **Tr. Ex. 53**; *see also* Declaration, **Tr. Ex. 126**.)

10.    In addition to funding HDNY, ACA has transferred funds to other entities associated with the Individual Debtor, including: (i) LSNY (LSNY Jan. 2019 HSBC Bank Statement at B&H_138766, **Tr. Ex. 92**; LSNY Aug. 2019 HSBC Bank Statement at B&H_138780, **Tr. Ex. 93**; *see also* Mar. 30, 2021, Letter, **Tr. Ex. 129**); (ii) Golden Spring (*see, e.g.*, Golden Spring Aug. 2019 Citibank Account Statement at 3, **Tr. Ex. 89**); (iii) Lamp Capital (*see, e.g.*, Lamp Capital Dec. 2021 DIME Bank Statement at 1, **Tr. Ex. 88**); (iii) Saraca (*see, e.g.*, Saraca Jan. 2019 Chase Bank Statement at 997, **Tr. Ex. 90**); and (iv) Lexington Property and Staffing, Inc. ("Lexington") (*see, e.g.*, Lexington June 2022 DIME Bank Statement at 1, **Tr. Ex. 91**).

11.    ACA also funded another entity associated with the Individual Debtor, Eastern Profit Corporation Limited ("Eastern Profit"), *see E. Profit. Corp. Ltd. v. Strategic Vision US LLC*, No. 18-cv-2185 (LJL), 2021 WL 2554631 (S.D.N.Y. June 22, 2021), and made payments to companies that managed/operated that certain yacht Lady May and a Bombardier jet (ACA HSBC Bank Statements at 3, 5, 8, 14, 34–35, 44, 53, 57, 64, 71, **Tr. Ex. 34**).  This Court has previously determined the Individual Debtor beneficially owns the Lady May and the Bombardier jet.  (Supplemental Memorandum of Decision, *HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. Mar. 30, 2023), ECF No. 177 *affirmed on other grounds by* Memorandum of Decision, Civil No. 3:23-CV-458 (KAD) (D. Conn. Aug. 23, 2024), ECF No. 60, *appeal pending* No. 24-2504 (2d Cir. April 24, 2025); Memorandum of Decision, *Despins v. Guo (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05008 (JAM) (Bankr. D. Conn. April 3, 2024), ECF No. 126, *affirmed sub nom.* Memorandum of Decision, *Guo v. Despins (In re Kwok)*, Civil No. 3:24-

CV-724 (KAD) (D. Conn. Jan. 21, 2025), ECF No. 24, *appeal pending* No. 25-405 (2d Cir. June 5, 2025).)

12.     On October 1, 2018, the law firm of Whitman, Breed, Abbott & Morgan LLC ("Whitman Breed") was engaged by Hodgson Russ to represent HDNY in connection with the contemplated purchase of real estate in Connecticut.  (Oct. 1, 2018, Letter, **Tr. Ex. 38**.)

13.     On November 13, 2019, Ms. Wang signed an exclusive right to represent buyer agreement on behalf of HDNY with Mr. Emile de Neree.  (Exclusive Right to Represent Buyer Agreement, **Tr. Ex. 37**.)  The agreement has a stamp on the bottom that says "Miles Guo"[6] and attached is a list of properties "to be viewed and/or already viewed by Buyer", including 373 Taconic Road, Greenwich, CT (the "Taconic Property").  (*Id.* Ex. A.)

14.     This Court has concluded HDNY and Saraca together funded the purchase of the Taconic Property (Memorandum of Decision at 50, *Despins v. Greenwich Land LLC (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. July 2, 2024), ECF No. 133).  Title to the Taconic Property, which the Court has ruled the Individual Debtor beneficially owned, was in the name of Greenwich Land.  (*See, generally*, *id.*)

15.     HDNY was also potential purchaser with respect to a number of contemplated real estate transactions that did not close, including with respect to properties located at 2 Fargo Lane, Irvington, NY (Residential Contract of Sale, **Tr. Ex. 41**); 110 Clapboard, Greenwich CT (*see, e.g.*, Oct. 1–16, 2018, Email Chain, **Tr. Ex. 42**); 32 Chateau Ridge Drive, Greenwich, CT (July 17–19, 2019, Email Chain, **Tr. Ex. 43**; Sept. 30–Oct. 1, 2018, Email Chain, **Tr. Ex. 44**; July 11–12, 2019, Email Chain, **Tr. Ex. 45**); Caritas Island, 140 Wallacks Drive, Stamford, CT (Confirmation of Accepted Offer, **Tr. Ex. 46**; Jan. 22, 2019, Email Chain, **Tr. Ex. 47**); 1405 34th

---

[6]  The Individual Debtor also goes by the name "Miles Guo".  *See* n. 1, *supra*.

Street, NW, Washington, D.C. (Jan. 22, 2019, Email Chain, **Tr. Ex. 48**); 7 Sutton Square, New

York, NY (Nondisclosure Agreement, **Tr. Ex. 49**; *see also* June 27, 2018, Email Chain, **Tr. Ex.**

**35**); and 230 West 56th Street, New York, NY (Aug. 3, 2018, Email Chain, **Tr. Ex. 50**).

16.     HDNY also transferred funds to the Individual Debtor's family members and

certain entities associated with the Individual Debtor.  For example:

a.      On July 2, 2019, and October 7, 2019, HDNY transferred a total of $600,000.00
to Ms. Hing Chi Ngok, the Debtor's wife (July 2019 Chase Bank Statement at 2224, **Tr.
Ex. 59**; Oct. 2019 CapitalOne Bank Statement at CapOne-Kwok-00000055, **Tr. Ex. 60**);

b.      On July 2, 2019, October 7, 2019, and October 19, 2021, HDNY transferred a
total of $1,000,000.00 to Ms. Guo (July 2019 Chase Bank Statement at 2224, **Tr. Ex. 59**;
Oct. 2019 CapitalOne Bank Statement at CapOne-Kwok-00000055, **Tr. Ex. 60**; Oct.
2021 IDB Bank DDA Statement at IDB Confidential 000395, **Tr. Ex. 61**);

c.      Between October 15, 2018, and January 21, 2020, HDNY transferred
$16,500,000.00 to Golden Spring (Oct. 15, 2018, Check, **Tr. Ex. 62**; HDNY Dec. 2018,
Chase Bank Statement at 2, **Tr. Ex. 63**; June 3, 2019, Check, **Tr. Ex. 64**; HDNY Aug.
2019 CapitalOne Bank Statement, **Tr. Ex. 65**; HDNY Dec. 2019 CapitalOne Bank
Statement, **Tr. Ex. 66**; HDNY Jan. 2020 CapitalOne Bank Statement, **Tr. Ex. 67**; *see
also* Certification of Business Records, **Tr. Ex. 127**);

d.      Between May 28, 2021, and December 21, 2021, HDNY transferred more than
$17,000,000.00 to Lamp Capital (HDNY May 2021 IDB Bank DDA Statement at IDB
Confidential 000371, **Tr. Ex. 55**; HDNY July 2021 IDB Bank DDA Statement at IDB
Confidential 000382, **Tr. Ex. 56**; HDNY Dec. 2021 IDB Bank DDA Statement at IDB
Confidential 000405, **Tr. Ex. 57**; HDNY Dec. 2021 Morgan Stanley Client Statement at
6, **Tr. Ex. 58**);

e.      Between August 16, 2019, and July 13, 2020, HDNY transferred more than
$4,500,000.00 to Greenwich Land (*Compare* HDNY July–Sept. 2019 CapitalOne Bank
Statement, **Tr. Ex. 68** *with* Greenwich Land Aug. 2019 CapitalOne Bank Statement, **Tr.
Ex. 75**; *compare* HDNY Feb. 2020 CapitalOne Bank Statement, **Tr. Ex. 69** *with*
Greenwich Land Feb. 2020 CapitalOne Bank Statement, **Tr. Ex. 74**; *compare* HDNY
March 2020 CapitalOne Bank Statement, **Tr. Ex. 70**; HDNY March 2020 CapitalOne
Bank Statement, **Tr. Ex. 71** *with* Greenwich Land March 2020 CapitalOne Bank
Statement, **Tr. Ex. 76**; *compare* HDNY July 2020 CapitalOne Bank Statement, **Tr. Ex.
73** *with* Greenwich Land July 2020 CapitalOne Bank Statement, **Tr. Ex. 77**; *see, e.g.*,
HDNY April 2020 CapitalOne Bank Statement, **Tr. Ex. 72**);

f. Across the dates of January 21, 2020, and January 28, 2020, HDNY transferred a total of $350,000.00 to LSNY (HDNY Jan. 2020 CapitalOne Bank Statement at CapOne-Kwok-00000063, **Tr. Ex. 78**; *see* Undisputed Facts 21–31, *infra*).

17.     During his March 2, 2023, deposition taken in the adversary proceeding styled

*HK International Funds Investments (U.S.A.) Limited, LLC v. Despins (In re Kwok)*, Case No.

22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), the Individual

Debtor, asserting his Fifth Amendment rights, did not dispute his ownership and control over all

assets of the HD Entities.  (Mar. 2, 2023, Depo. Tr. at 73:12–20 (Mr. Kwok testifying), **Tr. Ex.**

**27**.)

18.     During her deposition taken on September 13, 2023, in connection with the

adversary proceeding styled *Despins v. Greenwich Land, LLC (In re Kwok)*, Case No. 22-50073

(JAM), Adv. P. No. 23-05005 (JAM) (Bankr. D. Conn. July 2, 2024), Ms. Guo, asserting her

rights under the Fifth Amendment, did not dispute the Individual Debtor owned and controlled

HDNY and directed transfers of its money.  (Sept. 13, 2023, Depo. Tr. at 40:17–44:17, 68:13–

21, 74:15–75:20 (Ms. Guo testifying), **Tr. Ex. 39**.)  Previously, during her deposition taken on

January 20, 2023, in connection with a Fed. R. Bankr. P. 2004 subpoena issued in the jointly

administered Chapter 11 cases, Ms. Guo could not remember how many entities she owned other

than HK USA or what the names of such entities were.  (Jan. 20, 2023, Depo. Tr. at 60:18–61:6

(Ms. Guo testifying), **Tr. Ex. 40**.)

19.     Additionally, during testimony before the Court on August 22, 2023, on matters

in the jointly administered Chapter 11 cases, Ms. Guo, asserting her rights under the Fifth

Amendment, did not dispute that, among other things, HDNY was created at the Individual

Debtor's direction to acquire real property, the Individual Debtor at all times has controlled

HDNY and its assets, HDNY and HD Holding have no source of assets or funds other than those

controlled by the Individual Debtor, and the Individual Debtor had installed her as nominal sole owner of HD Holding.  (Aug. 22, 2023, Hr'g Tr. at 24:15–20, 25:10–24, 65:18–23, 73:11–74:1 (Ms. Guo testifying), **Tr. Ex. 125**.)

20.     The Court has separately found each of the HD Entities in contempt of court for failure to comply with Fed. R. Bankr. P. 2004 subpoenas.  (Main Case ECF Nos. 2009, 2545.)  In the order holding HD Holding in contempt, the Court noted "[c]ounsel to HD NY did not oppose the entry of an order holding HD NY in contempt because, subsequent to his appearance as counsel for HD NY and entry into the Consent Order on its behalf, he had come to be deeply confused and uncertain as to whether HD NY was a wholly owned subsidiary of HD Holding." (Main Case ECF No. 2545.)

### *Leading Shine NY*

21.     LSNY is a Delaware limited liability company formed on January 2, 2019. (Certificate of Incorporation, **Tr. Ex. 94**; Application for Authority, **Tr. Ex. 95**.)  The accounting firm Janover LLC ("Janover") assisted with the formation of LSNY.  (Jan. 4, 2019, Email, **Tr. Ex. 96**; Jan. 14, 2019, Email, **Tr. Ex. 97**.)  Janover also assisted the Individual Debtor. (Statement of Financial Affairs, Attachment in Response to Question # 6, Main Case ECF No. 77.)  Instructions with respect to the formation of LSNY were communicated to Janover by Mr. Krasner.  (Jan. 14–15, 2019, Email Chain, **Tr. Ex. 98**; *see also* Undisputed Fact 5, *supra* (Mr. Krasner has referred to the Individual Debtor as the "boss" or "principal").)  Mr. Krasner's instructions included placing Ms. Guo as the owner of LSNY.  (*Id.*)

22.     A written consent of the board of directors of LSNY dated January 3, 2019, signed by Ms. Guo as director, appointed Ms. Guo as president and secretary of LSNY and Ms. Wang as Treasurer of LSNY.  (Written Consent of Board of Directors, **Tr. Ex. 99**; *see also*

Undisputed Fact 5, *supra* (Ms. Wang has referred to the Individual Debtor as the "boss" or "principal").)  Counsel to LSNY has stated he is "satisfied . . . that Ms. Guo is the owner of [LSNY]."  (Mot. to Set Aside Default at 3, ECF No. 30.)

23.     Ms. Wang opened bank accounts on behalf of LSNY at HSBC, Investors Bank, and Charles Schwab.  (HSBC E-Channels Application Form, **Tr. Ex. 23**; Charles Schwab Account Application, **Tr. Ex. 100**; Investors Bank Account Application, **Tr. Ex. 101**; *see also* Declaration of Custodian of Records, **Tr. Ex. 130**.)  Moreover, HSBC account opening documents name Ms. Wang as President and 100% beneficial owner of LSNY, and Mr. Han Chunguang as signatory for the HSBC account; Investors Bank account opening documents name Ms. Wang and Mr. Krasner as authorized individuals with respect to fund transfers; and Charles Schwab account opening documents name Ms. Guo as 100% beneficial owner of LSNY. (HSBC E-Channels Application Form, **Tr. Ex. 23**; Charles Schwab Account Application, **Tr. Ex. 100**; Investors Bank Account Application, **Tr. Ex. 101**; *see* Charles Schwab Application Attachments (submitted by Attorney Mitchell), **Tr. Ex. 102**.)

24.     Leading Shine received funds from numerous sources associated with the Individual Debtor (*see* Undisputed Fact 4, 9–11, *supra*), including:

   a.     On January 22 and August 8, 2019, LSNY received in aggregate approximately $6,000,000.00 from ACA (LSNY Jan. 14–31, 2019, HSBC Bank Statement at B&H_138633, **Tr. Ex. 92**; LSNY Aug. 2019 HSBC Bank Statement at B&H_138780, **Tr. Ex. 93**);

   b.     On December 13, 2019, LSNY received $350,000.00 from Golden Spring (LSNY Dec. 2019 HSBC Bank Statement at B&H_138790, **Tr. Ex. 103**);

   c.     On January 21 and 28, 2022, LSNY received in aggregate $350,000.00 from HDNY (*Compare* LSNY Jan. 2020 HSBC Bank Statement at B&H_13138792–93, **Tr. Ex. 104** *with* HDNY Jan. 2020 CapitalOne Bank Statement at CapOne-Kwok-00000063, **Tr. Ex. 78**);

d.      On March 4, 9, and 27, 2020, LSNY received in aggregate $900,000.00 from Saraca (LSNY Mar. 2020 HSBC Bank Statement at B&H_138797–98, **Tr. Ex. 105**); and

e.      On August 20, 2020, LSNY received $3,000,000.00 from Savio Law LLC ("Savio Law") (LSNY Aug. 2020 Investors Bank Statement at 3, **Tr. Ex. 106**; *see also* Affidavit of Keeper of the Records, **Tr. Ex. 128**), a law firm whose principal, Mr. Nick Savio, is of counsel at Lawall & Mitchell LLC, Nick Savio profile at https://lmesq.com/attorneys/nick-savio/ (last accessed May 30, 2025), the law firm of the Individual Debtor's counsel (Main Case ECF No. 530).

25.     LSNY transferred funds to several individuals and entities associated with the

Individual Debtor (*see* Undisputed Fact 4, *supra*), including:

a.      On July 3, 2019, LSNY transferred $57,000.00 to Mr. Guo (LSNY July 2019 HSBC Bank Statement at B&H_138778, **Tr. Ex. 107**);

b.      Between September 2019 and May 2020, LSNY transferred a total of $1,100,000.00 to Gypsy Mei Food Services LLC ("Gypsy Mei") (LSNY Sept. 2019 HSBC Bank Statement at B&H_138783, **Tr. Ex. 108**; LSNY Nov. 2019 HSBC Bank Statement at B&H_138787, **Tr. Ex. 109**; LSNY May 2020 HSBC Bank Statement at B&H_138802, **Tr. Ex. 110**), which is held in the name of Ms. Guo (Limited Liability Company Agreement at HR0003019–23, **Tr. Ex. 118**);

c.      Between September 2019 and September 2020, LSNY transferred a total of $5,413,700.00 to Golden Spring (LSNY Dec. 2019 HSBC Bank Statement at B&H_138789, **Tr. Ex. 103**; LSNY Aug. 2020 Investors Bank Statement at 3, **Tr. Ex. 106**; LSNY July 2020 Investors Bank Statement at 1, 3, **Tr. Ex. 111**; LSNY Sept. 2020 Investors Bank Statement at 1, 3, **Tr. Ex. 112**; LSNY July 1–17, 2020, HSBC Bank Statement at B&H_138806, **Tr. Ex. 115**; LSNY May 2020 Investors Bank Statement at 1, **Tr. Ex. 116**; LSNY June 2020 Investors Bank Statement at 1, **Tr. Ex. 117**);

d.      Between March and July 2020, LSNY transferred a total of $697,492.11 to Hamilton Investment Management Ltd. ("Hamilton Investment") (LSNY Mar. 2020 HSBC Bank Statement at B&H_138798, **Tr. Ex. 105**; LSNY July 2020 Investors Bank Statement at 1, **Tr. Ex. 111**);

e.      On July 28, 2020, and August 3, 2020, LSNY transferred in aggregate $625,000.00 to ACA (LSNY Aug. 2020 Investors Bank Statement at 1, **Tr. Ex. 106**; LSNY July 2020 Investors Bank Statement at 3, **Tr. Ex. 111**);

f.      On August 6, 2020, LSNY transferred $400,000.00 to G Fashion Media Group Inc. ("G Fashion Media") (LSNY Aug. 2020 Investors Bank Statement at 1, **Tr. Ex. 106**), a G Fashion entity, which entities this Court has ruled "serve the purposes of the [Individual] Debtor, serve as business vehicles of the [Individual] Debtor, and [whose] members are personally loyal to the [Individual] Debtor" (Corrected Memorandum of

Decision ¶¶ 2, 3, 7, *Pac. All. Asia Opportunity Fund LP v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2025), ECF No. 133);

g.    In August and September 2020, LSNY transferred a total of $450,000.00 to Greenwich Land (LSNY Aug. 2020 Investors Bank Statement at 1, **Tr. Ex. 106**; LSNY Sept. 2020 Investors Bank Statement at 1, **Tr. Ex. 112**); and

h.    On September 22, 2020, LSNY transferred $3,273, 879.35 to Lamp Capital from its account at Investors Bank, emptying that account (Sept. 22, 2020, Check, **Tr. Ex. 112**).

26.    LSNY made transfers to professionals who provided services to the Individual

Debtor and entities associated with him, including:

a.    Between January and May 2020, LSNY transferred a total of $390,747.00 to GPS McQuhae LLP ("GPS") (LSNY Jan. 2020 HSBC Bank Statement at B&H_13138793, **Tr. Ex. 104**; LSNY Mar. 2020 HSBC Bank Statement at B&H_138798, **Tr. Ex. 105**; LSNY May 2020 HSBC Bank Statement at B&H_138802, **Tr. Ex. 110**), a law firm employing Mr. Phillip Loukis Georgiou who submitted an expert affidavit in support of the Individual Debtor in his litigation against Pacific Alliance Asia Opportunity Fund L.P. ("PAX") (Affirmation of Phillip Loukis Georgiou, **Tr. Ex. 113**);

b.    On March 5, 2020, LSNY transferred $39,527.55 to Berkeley Rowe Limited ("Berkeley Rowe") (LSNY Mar. 2020 HSBC Bank Statement at B&H_138797, **Tr. Ex. 105**), a law firm employing an attorney who sought to provide testimony in support of HK USA during the March 15, 2023, hearing in an adversary proceeding before this Court (*HK Int'l Funds Invs. (U.S.A.) Ltd., LLC v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. Mar. 14, 2023), ECF No. 136);

c.    On March 11, 2020, LSNY transferred $391,758.32 to Harcus Parker Limited ("Harcus Parker") (LSNY Mar. 2020 HSBC Bank Statement at B&H_138798, **Tr. Ex. 105**), counsel to the Individual Debtor in his litigation against UBS in the United Kingdom (Particulars of Claim, **Tr. Ex. 114**);

d.    On July 16, 2020, LSNY transferred $183,450.00 to a yacht management professional, Moran Yacht Management ("Moran") (LSNY July 2020 Investors Bank Statement at 1, **Tr. Ex. 111**; *see* Moran homepage at https://www.moranyachts.com/yacht-management/ (last accessed Sept. 19, 2024));

e.    On August 13, 2020, LSNY transferred $100,000.00 to Troutman Pepper Hamilton Sanders LLP ("Troutman") (LSNY Aug. 2020 Investors Bank Statement at 3, **Tr. Ex. 106**), which has served as counsel to Eastern Profit, *see E. Profit*, 2021 WL 2554631 (listing counsel to plaintiff), and Bravo Luck Limited (*see, e.g., Despins v.*

*Bravo Luck Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05027 (JAM) (Bankr. D. Conn. Jan. 9, 2023), ECF No. 12); and

f.      On August 17, 2020, LSNY transferred $100,000.00 to Lawall & Mitchell LLC, the law firm of the Individual Debtor's counsel, Mr. Mitchell (Aug. 6, 2020, Check, **Tr. Ex. 112**).

27.     On July 30, 2020, LSNY transferred $1,475,000.00 to the law firm Ivey Barnum & O'Mara LLC ("Ivey Barnum"). (LSNY July 2020 Investors Bank Statement at 3, **Tr. Ex. 111**.) The funds were used to purchase a residence at 354 Nod Hill Road in Wilton, Connecticut (the "Nod Hill Property"). (Purchaser's Closing Statement, **Tr. Ex. 122**; *see also* Oct. 5–8, 2020, Email Chain, **Tr. Ex. 124**.) On August 3, 2020, ROLS transferred $1,475,909.25 to LSNY from an account of ROLS at NexBank. (ROLS Aug. 2020 NexBank Statement at NexBank000146, **Tr. Ex. 119**.[7]) On August 19, 2020, ROLS's director of finance Mr. Ross Heinemeyer stated, in an email responding to an inquiry by employee of Nexbank about the August 3rd payment, that LSNY "is a holding company that loaned [ROLS] money to purchase property in CT for our future office. The reason we needed a loan is because we were changing banks, etc. and needed access to funds for the purchase. This payment was to pay off the loan in full." (Aug. 19, 2020, Email Chain, **Tr. Ex. 120**.) The Nod Hill Property was sold on November 18, 2020, for a total of $1,452,000.00 million. (Settlement Statement at ROLS-CT BK 515, **Tr. Ex. 123**.) Subsequently, Mr. Heinemeyer stated in an email that the property was sold and the proceeds returned to ROLS. (Dec. 18, 2020, Email, **Tr. Ex. 121**.)

28.     During his March 2, 2023, deposition taken in the adversary proceeding styled *HK International Funds Investments (U.S.A.) Limited, LLC v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), the Individual

---

[7] Trustee Exhibit 119 is not labeled but appears starting at page 357 of docket item 102.

Debtor, asserting his Fifth Amendment rights, did not dispute his ownership and control over LSNY. (March 2, 2023, Depo. Tr. at 49:15–50:22 (Mr. Kwok testifying), **Tr. Ex. 27**.) In the Individual Debtor's sworn declaration dated May 11, 2023, in response to a Fed. R. Bankr. P. 2004 subpoena, an order compelling his response to the subpoena, and a pending motion for contempt for failing to respond to the subpoena, he asserted his Fifth Amendment rights and did not dispute his control over LSNY. (Sworn Declaration ¶ 158, **Tr. Ex. 28**.)

29.     On April 13, 2023, the Trustee served LSNY with a subpoena pursuant to Fed. R. Bankr. P. 2004 (Proof of Service, **Tr. Ex. 33**), to which subpoena LSNY never responded. Similarly, on December 14, 2023, default entered against LSNY in this adversary proceeding for failure to timely respond to the complaint. (ECF No. 13.)

30.     On January 2, 2024, LSNY appeared through counsel and filed a motion to set aside the default, in which it stated, among other things, that "in part because even the Trustee . . . is unsure who controls Leading Shine, and, in part due to the fact that Ms. Guo no longer has access to many records and resources, the undersigned was required to conduct a diligent investigation before appearing on behalf of Leading Shine." (Mot. to Set Aside Default ¶ 9, ECF No. 30.)

31.     On March 6, 2024, the Court entered a memorandum of decision and order granting LSNY's motion to set aside the default. (Memorandum of Decision, ECF No. 74.) The Court granted the motion based on a lack of prejudice on the specific facts and circumstances of the default and the public's interest in having matters determined on the merits (*id.* at 10–11), despite finding LSNY had not set forth a meritorious defense because "Leading Shine fails to put forward factual material and instead argues, essentially a motion to dismiss based on meritless legal arguments" (*id.* at 9). The Court also observed, among other things, "Leading Shine cannot

24

argue both that Ms. Guo truly controls Leading Shine and that it is beyond her control to know whether she controls it."  (*Id.* at 7–8.)

## VI.    DISCUSSION

The Trustee alleges HDNY and LSNY are under New York and Delaware law[8], respectively, *alter egos* of, or they and their assets are beneficially owned by, the Individual Debtor.  The Trustee argues he is entitled to judgment as a matter of law on his claims upon the undisputed facts.  In addition to their evidentiary objections addressed above, the HD Entities and LS Parties object to the Trustee's standing to bring his claims, object to the relief he seeks through his *alter ego* claims, and assert the factual record is insufficient to establish beneficial ownership.  The Court will first address the Trustee's standing to bring the claims and then turn to the parties' arguments on the merits of his claims.

### A.    Standing

In ruling on the HD Entities' and LS Parties' motions to dismiss, the Court determined the Trustee has standing to bring his claims.  (Memorandum of Decision at 5–14, ECF No. 87.) The HD Entities and LS Parties ask the Court to reconsider its prior ruling on this issue.  The Trustee argues there is no reason to revisit the Court's prior ruling, which was correct.  The Trustee also notes this issue has been serially litigated in the adversary proceedings associated

---

[8]  Because it is undisputed HDNY is a New York entity and LSNY is a Delaware entity (Undisputed Facts 1, 21), the Court concludes New York law applies to the Trustee's claims regarding HDNY and Delaware law applies to his claims regarding LSNY.  *See Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) (holding bankruptcy courts generally apply forum state choice-of-law rules for issues of state law); *Weber v. U.S. Sterling Secs., Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying Restatement (Second) of Conflict of Laws regarding an *alter ego* claim and a limited liability company and holding the law of the forum state applies).

with these jointly administered Chapter 11 cases, including by Ms. Guo and various entities she nominally directly or indirectly owns.

The Court agrees with the Trustee and incorporates by reference its prior ruling on this issue herein.  (Memorandum of Decision at 5–14, ECF No. 87.)  The Court also observes for the record there is a troubling pattern in these adversary proceedings of raising this issue, appealing this Court's rulings but *not* with respect to this issue, and then, in another adversary proceeding, raising this issue again and receiving the same ruling from the Court.

Nevertheless, because the United States Court of Appeals for the Second Circuit has issued an intervening opinion relevant to the Trustee's standing, *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90 (2d Cir. 2024), the Court will address the parties' related arguments. The HD Entities and LS Parties argue under *Nordlicht* the Trustee can only have standing to bring his *alter ego* claims pursuant to section 541 of the Bankruptcy Code – not section 544 – and, therefore, he can only bring his *alter ego* claims standing in the shoes of the Individual Debtor – not the Individual Debtor's creditors.  As such, the HD Entities and LS Parties argue the Trustee does not have standing to bring his *alter ego* claims under the doctrine propounded by *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) because the Individual Debtor – and by imputation the Trustee – is *in pari delicto* with HDNY and LSNY. The Trustee argues *Wagoner* does not apply because (i) *Nordlicht* holds *alter ego* claims are property of the estate under section 541 because of they are general claims of *creditors*; and (ii) *Nordlicht* is consistent with the Trustee having standing under section 544 to bring *alter ego* claims as general claims of creditors.   The Trustee also argues even if he brought his *alter ego* claims standing in the shoes of the Individual Debtor, exceptions to *in pari delicto* apply such that he has standing under *Wagoner*.

26

The Court agrees with the Trustee.  In *Wagoner*, the Second Circuit was not concerned with claims brought on behalf of creditors – the trustee asserted he was bringing claims of the debtor.  944 F.2d at 118 ("The trustee insists he is not asserting the claims of the noteholders, so it is unnecessary for us to delve deeply into when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors.").  While the Bankruptcy Code provides a bankruptcy trustee standing to bring certain claims on behalf of creditors, *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989), absent such statutory authority "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself", *Wagoner*, 944 F.2d 114, 118; *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995); *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir. 1994), and courts must determine (i) whether the debtor could have brought the claim and (ii) if so, whether the trustee is *in pari delicto* by imputation of the debtor's conduct, *Wagoner*, 944 F.2d at 119–20.[9]

In *PepsiCo*, which concerned a trustee's standing to bring *alter ego* claims, the Second Circuit adopted the approach of the United States Court of Appeals for the Seventh Circuit in *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987).  *PepsiCo*, 884 F.2d at 697–98, 700–01, 704–05.  In *Koch Refining*, the Seventh Circuit held that, pursuant to section 544(a), a bankruptcy trustee is "the representative of the general creditors" and could pursue *alter ego* claims because they address generalized rather than particularized harm to creditors.  831 F.2d at 1351–54; *see Titan Real Est. Ventures, LLC v. MJCC Realty Ltd. P'ship*

---

[9]  Although an assertion of *in pari delicto* is typically considered an affirmative equitable defense, the *Wagoner* doctrine, including its consideration of *in pari delicto*, "functions as a prudential standing limitation."  *Carney ex rel. Highview Point Partners, LLC v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 228 (D. Conn. 2015).

*(In re Flanagan)*, 415 B.R. 29, 47 (D. Conn. 2009).  This accords with the statutory text of

section 544(a): any judgment creditor could bring an *alter ego* claim to collect on their debt; it

does not depend on its particular claim.  11 U.S.C. § 544(a).[10]

     *Nordlicht* is consistent with *PespiCo*.  Both decisions state trustees have standing to bring

*alter ego* on behalf of creditors at large and that *alter ego* claims are property of the estate.

*Compare Nordlicht*, 115 F.4th at 104–06, 107–11 *with PepsiCo*, 884 F.2d at 701.  While

*Nordlicht* itself is silent on section 544(a), there is no incongruity between holding *alter ego*

claims are property of the estate and holding that section 544(a) gives a trustee standing to bring

claims of general creditors.  Indeed, the former would flow from the latter.

     However, even if the HD Entities and LS Parties are correct and *Nordlicht* follows a line

of cases starting with *Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222 (8th Cir.

1987), which, unlike *PepsiCo and Koch*, held that section 544(a) does not provide the trustee

standing to bring general claims of creditors at large, *see PepsiCo*, 884 F.2d at 698–99, *Nordlicht*

states trustees have standing to bring *alter ego* claims as general claims of *creditors*, 115 F.4th at

105 ("However, not all claims asserted by a creditor are 'property of the estate.'  Only 'general'

claims are; 'personal' claims are not.").  As the Court observed in ruling on the motions to

---

[10]   While the Second Circuit distinguished *PepsiCo* in *Picard v. JPMorgan Chase Bank & Co.
(In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 70–71 (2d Cir. 2013), it did so on facts
where the Securities Investor Protection Act trustee sought to bring particularized claims of
defrauded creditors – even if such claims were very commonly held on the particular facts of the
Madoff Ponzi scheme, *JPMorgan¸* 721 F.3d at 58–59.  The claims in *JPMorgan* closely
resemble those in *Wagoner*.  *Compare JPMorgan*, 721 F.3d at 58–59 *with Wagoner*, 944 F.2d at
116–17.  Indeed, section 544(a) avoids this sort of accidentally general claim because it does not
give a trustee standing to bring claims of particular creditors but rather the standing to bring
claims a hypothetical judgment creditor – without a particular underlying claim – could bring,
that is, section 544(a) introduces a creditor external to the particular facts surrounding the debtor
and its debts.

dismiss (*See* Memorandum of Decision at 12, ECF No. 87), *Wagoner* does not apply to general

claims of creditors brought by a trustee as property of the estate, 944 F.2d at 118.[11]

Here, as the Court stated in its ruling on the motions to dismiss, the claims at issue are

general claims of creditors:

> Regarding HDNY, New York law recognizes reverse piercing of the corporate veil by creditors. *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (applying New York law) (citing *State v. Easton*, 647 N.Y.S.2d 904, 908 (N.Y. Sup. Ct. 1995)).  New York law also allows creditors to bring beneficial ownership claims under a nominee theory.  *Exp.-Imp. Bank of United States v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010) (applying New York law) (citing *United States v. Coluccio*, 51 F.3d 337, 341 (2d Cir. 1995) (applying New York law)).  Hence, claims three and four could both be brought by creditors generally.

> Regarding Leading Shine, Delaware law allows creditors to reverse pierce the corporate veil. *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021).  Delaware also recognizes beneficial ownership claims.  *See Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945) (citing *Chadwick v. Parkhill Corp.*, 41 A. 823 (Del. Ch. 1928)); *Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Preston v. Allison*, 650 A.2d 646 (Del. 1994); *Hannigan v. Italo Petroleum Corp. of Am.*, 77 A.2d 209, 213 (Del. 1949).  Furthermore, creditors may bring beneficial ownership actions.  *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023).  Any hypothetical creditor could bring claims five and six.

(Memorandum of Decision at 13, ECF No. 87.)  *Nordlicht* itself involved a reverse veil-piercing

claim brought under New York law.  115 F.4th at 107–09.  Hence, the Trustee has standing to

---

[11]  It would be truly illogical and inequitable for a trustee to have standing – to the exclusion of creditors – to bring general claims, *see PepsiCo*, 884 F.2d at 704–05, and have those claims be vulnerable to an *in pari delicto* defense they would not be susceptible to if brought by creditors outside of bankruptcy.  *Gordon v. Harman (In re Harman)*, 529 B.R. 352, 353 (Bankr. N.D. Ga. 2015) ("Trustee stands in the shoes of the creditors whose claims are unable to proceed because of the bankruptcy; it would be inequitable to prevent creditors from asserting their claims due to the existence of the bankruptcy estate while simultaneously imputing Debtor's alleged conduct on Trustee.  The doctrine of *in pari delicto* would not apply to Debtor's creditors; therefore, it should not apply to Trustee.").  Contrary to the HD Entities' and LS Parties' arguments, *Nordlicht* and *Wagoner* do not require this inequitable result.

bring these claims.  *Wagoner* is inapplicable and, accordingly, the Court does not reach the parties' arguments regarding *in pari delicto*.

**B.    Hudson Diamond NY**

Turning to the merits, the Court will first consider whether the Trustee is entitled to a judgment as a matter of law that HDNY is an *alter ego* of, or it and its assets are beneficially owned by, the Individual Debtor.

**1.    *Alter ego***

As stated above, New York law recognizes reverse piercing of the corporate veil by creditors.  *Nordlicht*, 115 F.4th at 107–09.  "[C]ourts will disregard the corporate form . . . whenever necessary 'to prevent fraud or achieve equity'".  *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018) (quoting *Morris v. Dep't of Tax'n*, 623 N.E.2d 1157, 1160 (N.Y. 1993)).  *Alter ego* liability requires a showing of (i) "complete domination and control over the corporation" and (ii) "abuse[ of] the privilege of doing business in the corporate form to perpetrate a wrong or injustice."  *Bonderman*, 96 N.E.3d at 203–04 (quoting *E. Hampton Union Free School Dist. v. Sandpebble Builders, Inc.*, 944 N.E.2d 1135, 1136 (N.Y. 2011)); *accord MAG Portfolio Consult, GmbH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (applying New York law).  Courts

consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio*, 268 F.3d at 63 (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).

The Trustee argues the Individual Debtor's dominance and control over HDNY to the exclusion of Ms. Guo is demonstrated by (i) the Individual Debtor controlling the formation of HDNY and installing his son and then his daughter as its nominal owner; (ii) the Individual Debtor operating HDNY out of his office, shared by numerous *alter egos* of the Individual Debtor; (iii) the Individual Debtor controlling and managing HDNY through his agents; (iv) the Individual Debtor funding HDNY through entities he controls; (v) the Individual Debtor using HDNY to fund real property purchases; (vi) the Individual Debtor using HDNY to transfer money to other entities he controls and his family members; and (vii) Ms. Guo lacking knowledge of her legal ownership of HDNY and about its business. The Trustee argues the wrong or injustice is that HDNY's corporate form was used by the Individual Debtor to shield his assets from his creditors while funding his billionaire lifestyle.

Other than their evidentiary arguments, the HD Entities argue (i) under New York law *alter ego* is a remedy – not a claim – that must be brought with a companion claim and, therefore, the Trustee fails to state a claim for relief; and (ii) the Trustee impermissibly seeks *nunc pro tunc* relief.

The Court agrees with the Trustee. First, *alter ego* is a claim for relief. The Second Circuit has ruled *alter ego* is not a remedy under New York law; it is a claim – a right to payment or equitable relief – that can be brought and liquidated by a trustee in a bankruptcy case – and even if it were only a remedy at state law, it is a claim under the Bankruptcy Code. *Nordlicht*, 115 F.4th at 109–11. Under section 544(a) of the Bankruptcy Code, the Trustee is a deemed judgment creditor of the Individual Debtor. He has already succeeded on his companion

claim. Similarly, the Proofs of Claim filed in the Individual Debtor's case are deemed allowed unless and until a successful objection is brought. The Trustee brings his claim on behalf of the creditors at large. The HD Entities' argument ignores the underlying bankruptcy case to present the Trustee's claim as a legal oddity – an untethered remedy unattached to a claim – when in fact it is entirely a collection action.

Second, the undisputed facts establish the Individual Debtor dominated and controlled HDNY to the exclusion of Ms. Guo, its nominal indirect owner. There is no genuine dispute of material fact that:

a.      The Individual Debtor controlled the formation of HDNY through his agents – Ms. Wang, Mr. Krasner, and Mr. Podhaskie – and counsel – Hodgson Russ – and installed his blood relatives – first his son, Mr. Guo, then his daughter, Ms. Guo – as the indirect nominal owners of HDNY (Undisputed Facts 2, 5–7);

b.      HDNY operated out of an address used by, among others, the Individual Debtor himself as well as several of his adjudged *alter egos* – Golden Spring, Lamp Capital, Greenwich Land, and HK USA[12] – and his counsel – Mr. Mitchell – (Undisputed Facts 3–4);

c.      The Individual Debtor managed HDNY through his agents– Ms. Wang, Mr. Krasner, and Mr. Podhaskie – while Ms. Guo was not certain she nominally owned HDNY (Undisputed Facts 5–8, 12–13, 18–20);

d.      HDNY was funded by entities – ACA and Saraca – associated with the Individual Debtor (Undisputed Facts 4, 9–11);

e.      HDNY was used – together with Saraca, a media company of the Individual Debtor – to fund the purchase of the Taconic Property – which the Individual Debtor beneficially owns – by the Individual Debtor's adjudged *alter ego*, Greenwich Land (Undisputed Facts 4, 12–14); and

f.      HDNY was also used to transfer money to the Individual Debtor's family members – Ms. Ngok and Ms. Guo – and adjudged *alter egos* – Golden Spring, Lamp Capital, and Greenwich Land[13] – (Undisputed Facts 4, 16).

---

[12]  Also, LSNY. *See* Discussion § C.1., *infra*.
[13]  *See* n. 12, *supra*.

These undisputed facts demonstrate all factors listed in *MAG Portfolio* as follows:

> (1) Corporate formalities were disregarded as the Individual Debtor rather than Ms. Guo controlled HDNY; (2) HDNY was ephemerally capitalized as it was used to purchase assets for other entities and transit money to other entities and persons; (3) HDNY's funds were intermingled with those of other *alter egos* of the Individual Debtor, his family members, and associates; (4) HDNY shared of officers, directors, and personnel with other *alter egos* of the Individual Debtor; (5) HDNY shared office space with the Individual Debtor and other *alter egos* of the Individual Debtor; (6) HDNY's completely lacked independent management; (7) HDNY engaged in a series of transactions with the Individual Debtor's other *alter egos* that were not at arm's length; (8) HDNY's completely lacked an independent business purpose; (9) HDNY was funded entirely by entities associated with the Individual Debtor; and (10) HDNY's property was intermingled with that of other *alter egos* of the Individual Debtor.

*See* 268 F.3d at 63.

Third, there is no genuine dispute of material fact that the abuse of HDNY's corporate form hindered, delayed, or defrauded the Individual Debtor's creditors. It is undisputed the Individual Debtor is nominally insolvent to an extreme degree. (Undisputed Fact 1.) Through sheltering assets in a corporate entity held by a blood relative from collection by his creditors, which assets the Individual Debtor continued to control and use, the form of HDNY causes an injustice or inequity. *See Salomon ex rel. Kaiser v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983) (in the fraudulent transfer context this fact pattern meets several badges of fraud).

Fourth and finally, the Trustee does not seek *nunc pro tunc* relief; he seeks to align legal reality with the factual reality of the Individual Debtor's abuse of HDNY's corporate form. *See Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 749 n. 9 (N.D. Ill. 2022) (rejecting "confusing" argument that an *alter ego* determination would be impermissibly retroactive in a bankruptcy case). *Alter ego* is "an inquiry into whether the debtor corporation is little more than a legal fiction." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).

For all these reasons, the Court determines there is no genuine dispute of material fact and the Trustee is entitled to a judgment as a matter of law on his third claim that HDNY is an *alter ego* of the Individual Debtor.

## 2.    Beneficial Ownership

New York law recognizes beneficial ownership in actions to collect on a debt.  *See, e.g.*, *In re Gliklad v. Chernoi*, 12 N.Y.S.3d 65 (N.Y. App. Div. 2015) (affirming order requiring judgment debtor to turn over beneficial ownership of a business); *Guilder v. Corinth Constr. Corp.*, 651 N.Y.S.2d 706 (N.Y. App. Div. 1997) (remanding case to determine whether individual defendants equitably owned a corporate defendant and whether the plaintiff could pierce the corporate veil between the corporate defendant and its potential equitable owners); *Pac. All. Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017, 2022 WL 406636 (N.Y. Sup. Ct. Feb. 9, 2022) (determining judgment debtor beneficially owned yacht in action to collect on judgment).  Courts "hold that an individual has an interest in property, even when he does not own that property, so long as the property benefitted him as if he had received the property directly." *Exp.-Imp. Bank*, 609 F.3d at 120.  Courts consider, among other things, whether "(1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property." *Dordevic*, 67 F.4th at 381.  Courts must perform this analysis "on an asset-by-asset basis." *U.S. Secs. & Exch. Comm'n v. Ahmed*, 72 F.4th 379, 409 (2d Cir. 2023).

The Trustee argues he is entitled to a judgment as a matter of law that the Individual Debtor beneficially owned HDNY and its assets because HDNY and its assets benefitted him as

if they were his own as shown by the same factual record that establishes HDNY is the Individual Debtor's *alter ego*.  In addition to their evidentiary objections, the HD Entities argue the Trustee has insufficiently identified the assets he claims the Individual Debtor beneficially owns.

The Court agrees with the Trustee.  The Trustee has identified HDNY and its bank accounts specifically.  (Undisputed Facts 2, 8.)  As discussed in greater detail in the preceding section, there is no genuine dispute of material fact that (i) the Individual Debtor dominated and controlled HDNY and each of its bank accounts to the exclusion of Ms. Guo, his daughter and the nominal indirect owner of HDNY (Undisputed Facts 2–13, 18–20); and (ii) the Individual Debtor benefitted from HDNY and each of its bank accounts as if they were his own (Undisputed Facts 14–16).  *See Dordevic*, 67 F.4th at 381.  Based on the undisputed facts, the Court concludes the Trustee is entitled to a judgment as a matter of law on his fourth claim that the Individual Debtor beneficially owns HDNY and its bank accounts.

### C.    Leading Shine NY

Having determined the Trustee is entitled to summary judgment with respect to his claims against the HD Entities, the Court will now consider whether the Trustee is entitled to a judgment as a matter of law that LSNY is an *alter ego* of, or it and its assets are beneficially owned by, the Individual Debtor.

### 1.    *Alter Ego*

As noted above in the discussion on standing, Delaware law allows creditors to seek reverse veil-piercing.  *Manichaean Cap.*, 251 A.3d at 714–15.  Traditional *alter ego* claims have two elements: (i) the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged *alter ego* that the corporate entity and its *alter ego* are, in fact, a single

economic unit; and (ii) the corporate form to be disregarded causes fraud or some similar

injustice.  *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace*

*ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999);

*Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see also Fletcher v. Atex,*

*Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law); *Tronox Inc. v. Anadarko*

*Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying

Delaware law).  In considering whether to reverse pierce the corporate veil, courts consider "the

traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim",

discussed above, as well as additional factors reflecting the concern that creditors and other

stakeholders of the entity might have their legitimate expectations thwarted.  *Manichaean Cap.*,

251 A.3d at 714–15.

　　With respect to the first traditional *alter ego* element, Delaware courts consider several

factors, including without limitation "(1) whether the company was adequately capitalized for

the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were

observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in

general, the company simply functioned as a facade for the dominant shareholder."  *Manichaean*

*Cap.*, 251 A.3d at 706 (internal citations omitted); *see Blair v. Infineon Tech., AG*, 720 F. Supp.

2d 462, 470–71 (D. Del. 2010).  None of these factors is dispositive in determining dominion and

control.  *Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 471.

Regarding the second element, it is not necessary to allege (i) fraud – it is only necessary to

allege injustice, *Fletcher*, 68 F.3d at 1457, or (ii) fraudulent intent in the creation of the corporate

form – it is only necessary to allege that the corporate form *causes* fraud or a similar injustice,

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

The Trustee argues the undisputed facts establish Individual Debtor dominated and controlled LSNY to the exclusion of Ms. Guo causing fraud or injustice to his creditors. The Trustee asserts while (i) the Individual Debtor controlled the formation of LSNY and placed it under the nominal ownership of his blood relative, Ms. Guo; (ii) the Individual Debtor controlled and managed LSNY through his agents; (iii) the Individual Debtor funded LSNY through his *alter egos* and other entities associated with him; (iv) the Individual Debtor used LSNY to transfer money to family members, his *alter egos*, and other entities associated with him; and (v) the Individual Debtor used LSNY to pay his own expenses, Ms. Guo had difficulty ascertaining whether she legally owned LSNY.

In addition to their evidentiary objections, the LS Parties argue (i) under Delaware law, *alter ego* only imposes vicarious liability and, hence, the Trustee cannot recover; and (ii) the Trustee impermissibly seeks *nunc pro tunc* relief.

The Court agrees with the Trustee. First, the LS Parties' reliance on *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482 (6th Cir. 2017) is misplaced. "Under the vicarious liability approach, however, veil piercing does not give the pierced entity (*i.e.*, the debtor) an interest in its alter ego's assets—it gives the pierced entity's *creditor* (*i.e.*, the trustee) an interest in the alter ego's assets in order to satisfy its judgment against the pierced debtor." *Howland*, 674 F. App'x at 487; *see Nordlicht*, 115 F.4th at 105 ("General claims are 'property of the estate' . . . because they 'inure[] to the benefit of all creditors' by enlarging the estate'") (quoting *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)) (alterations other than ellipses in original). *Howland* supports the availability of the Trustee's requested relief, *i.e.*, the turnover of

LSNY's assets to the estate, without regard to whether Delaware *alter ego* law merely imposes vicarious liability. As stated above, under section 544(a) of the Bankruptcy Code, the Trustee is a deemed judgment creditor of the Individual Debtor and creditors' claims are deemed allowed unless and until a successful objection is brought. The Trustee brings his claims on behalf of the creditors at large to *collect*.

Second, the undisputed facts establish the Individual Debtor dominated and controlled LSNY to the exclusion of Ms. Guo, its nominal owner. There is no genuine dispute of material fact that:

a. The Individual Debtor controlled the formation of LSNY through his agents – Ms. Wang and Mr. Krasner – and accountants – Janover – and installed his daughter – Ms. Guo – as the nominal owners of LSNY (Undisputed Facts 5, 21);

b. The Individual Debtor controlled and managed LSNY through his agents – Ms. Wang and Mr. Krasner – (Undisputed Facts 5, 22–23);

c. LSNY operated out of an address used by, among others, the Individual Debtor himself as well as several of his adjudged *alter egos* – Golden Spring, Lamp Capital, HDNY, Greenwich Land, and HK USA – and his counsel – Mr. Mitchell – (Undisputed Facts 3–4);

d. The Individual Debtor funded LSNY through his adjudged *alter egos* – Golden Spring and HDNY – and other entities associated with him – ACA, Saraca, and Savio Law – (Undisputed Facts 4, 24);

e. The Individual Debtor used LSNY to transit funds from his adjudged *alter egos* – Golden Spring and HDNY – and entities associated with him – ACA, Saraca, and Savio Law – to his family members – Mr. Guo and Ms. Guo's entity, Gypsy Mei – and to other adjudged *alter egos* – Golden Spring, Greenwich Land, and Lamp Capital – and entities associated with him – Hamilton Investment, ACA, G Fashion Media, and ROLS – (Undisputed Facts 4, 24–25, 27);

f. The Individual Debtor used LSNY to pay professionals for legal services rendered to him and to maintain his personal assets (Undisputed Fact 26); and

g. Ms. Guo had difficulty ascertaining whether she legally owns LSNY (Undisputed Fact 29–31).

The Court concludes from these undisputed facts that (i) LSNY was only ephemerally capitalized as funds transited through it enroute from one *alter ego* of the Individual Debtor to another; (ii) corporate formalities were not observed as LSNY was operated by the Individual Debtor who held no formal role at LSNY; (iii) the Individual Debtor siphoned LSNY's funds to pay his personal expenses and transfer funds to his family members and his *alter egos*; and (iv) LSNY had no independent business purpose and functioned as a mere façade for the Individual Debtor. *See Manichaean Cap.*, 251 A.3d at 706.

Third, there is no genuine dispute of material fact that the abuse of LSNY's corporate form hindered, delayed, or defrauded the Individual Debtor's creditors. LSNY was an instrument in the Individual Debtor's shell game, nominally held by a blood relative and used to transit money between various funds he controlled and keep them away from creditors (Undisputed Facts 4–5, 24–27) while he himself was insolvent (Undisputed Fact 1). *See Kaiser*, 722 F.2d at 1582–83.

Fourth, there is no genuine dispute of material fact that LSNY was a shell company without its own stakeholders who would be prejudiced by an *alter ego* determination. LSNY had no independent business purpose and merely existed as a conduit for the transfer of funds and the payment of the Individual Debtor's own expenses. (Undisputed Facts 4–5, 21–31.)

Fifth and finally, as stated above, the Trustee is not seeking *nunc pro tunc* relief; he seeks to align legal reality with the factual reality of the Individual Debtor's abuse of HDNY's corporate form. *See Wolf*, 644 B.R. at 749 n. 9; *see also Pearson*, 247 F.3d at 485.

For all these reasons, the Court determines there is no genuine dispute of material fact and the Trustee is entitled to a judgment as a matter of law on his fifth claim that LSNY is an *alter ego* of the Individual Debtor.

### 2.    Beneficial Ownership

Delaware recognizes beneficial ownership claims.  *See, e.g.*, *Schenk*, 41 A.2d at 586; *Hudak*, 806 A.2d at 140; *Preston*, 650 A.2d at 646; *Hannigan*, 77 A.2d at 213.  Creditors may bring beneficial ownership actions.  *See LiButti*, 968 F. Supp. at 75; *Dordevic*, 633 B.R. at 558.  As stated above, courts consider whether "(1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property", *Dordevic*, 67 F.4th at 381, "on an asset-by-asset basis", *Ahmed*, 72 F.4th at 409.

The Trustee argues the Individual Debtor beneficially owns LSNY and its bank accounts for the same reasons LSNY is his *alter ego*.  In addition to their evidentiary objections, the LS Parties argue the Trustee has failed to present his claim on an asset-by-asset basis.

The Court agrees with the Trustee.  The Trustee has identified LSNY and its bank accounts specifically.  (Undisputed Facts 21, 23.)  As set forth in the preceding section, there is no genuine dispute of material fact that (i) the Individual Debtor dominated and controlled LSNY and each of its bank accounts to the exclusion of Ms. Guo, his daughter and the nominal owner of LSNY (Undisputed Facts 4–5, 21–24, 29–31); and (ii) the Individual Debtor benefitted from LSNY and each of its bank accounts as if they were his own (Undisputed Facts 4, 25–27).  *See Dordevic*, 67 F.4th at 381.  Based on the undisputed facts, the Court concludes the Trustee is entitled to judgment as a matter of law on his sixth claim that the Individual Debtor beneficially owns LSNY and its bank accounts.

## VII.   CONCLUSION AND ORDER

For the reasons stated above, the Court grants the Motion for Summary Judgment.  The Trustee has met his burden at summary judgment.  *See Celotex*, 477 U.S. at 323.  Consistent with their persistent inability to comply with discovery requirements and Court deadlines, the HD Entities and LS Parties have failed to put forward any factual material tending to support their claims.  *See Matsushita Elec. Indus.*, 475 U.S. at 586.  Instead, the HD Entities and LS Parties have relied on legal arguments as to the sufficiency of the Trustee's factual material and the availability of relief for his claims.  None of these arguments has any merit.  Accordingly, it is hereby

**ORDERED:**  The Motion for Summary Judgment (ECF No. 97) is **GRANTED**.  Separate judgment has already entered on the first and second claims.  (ECF No. 66.)  Pursuant to Fed. R. Civ. P. 58(b), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7058, because the Court grants summary judgment as to all remaining claims, the third through sixth claims, a separate judgment shall enter consistent with this Opinion and Order; and it is further

**ORDERED:**  On or before June 27, 2025, the parties shall jointly submit a form of judgment consistent with this Opinion and Order.  With respect to the fourth and sixth claims, the judgment shall delineate with specificity the ownership interests and bank accounts to be turned over; and it is further

**ORDERED:**  The documents submitted in support of and in opposition to the Motion for Summary Judgment are unsealed to the extent necessary to publish this Opinion.  Except as provided herein, the Sealing Orders (ECF Nos. 5, 103, 116) remain in full force and effect until further order of the Court.

Dated at Bridgeport, Connecticut this 17th day of June, 2025.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut